Thomas J. Downs, Administrator of the Estate of John F. Sengelaub, and Thomas J. Downs, Administrator of the Estate of Dorothy Sengelaub, Plaintiff-Appellant, v. Samuel J. Camp and John Dillard, Defendants-Appellees.

Gen. No. 52,337.

First District, Fourth Division.

July 23, 1969.

Moses, McGarr, Gibbons, Abramson & Fox, of Chicago (Donald J. Parker, of counsel), for appellant.

McCoy, Ming & Black, of Chicago (Walter K. Black and Ellis E. Reid, of counsel), for appellees.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Plaintiff public administrator of the Estates of John and Dorothy Sengelaub brought two separate actions for the wrongful deaths of the Sengelaubs for the benefit of their two minor children, John and Dale Sengelaub. Defendants, Samuel J. Camp and John Dillard, were both police officers of the Village of East Chicago Heights. The causes were consolidated for trial. The jury re-

turned a verdict for the two defendants, and judgment was entered thereon. The trial court denied plaintiff's post-trial motions. Plaintiff appeals, contending that the trial court erred in instructing the jury; that the opening statement and closing argument of counsel for defense contained prejudicial remarks; that the trial court erred in restricting the attendance at trial of the two minor children, the real parties in interest; and that the verdict was against the manifest weight of the evidence.

John and Dorothy Sengelaub were killed on August 30, 1959, at about 1:30 a. m., when an automobile operated by James Plair ran a stop sign at the intersection of Sauk Trail and Cottage Grove, located in an unincorporated area of Cook County, and struck a vehicle operated by John Sengelaub. A woman passenger in Plair's vehicle was also killed in the accident. Plair survived, but could not be located at the time of trial. Without a lawsuit, Plair's insurance carrier had paid $18,000 to plaintiff in exchange for a covenant not to sue.

At the time of the accident, Plair was being pursued by defendants in their squad car. Shortly before, at Route 30 and State Street, defendants had stopped Plair for speeding. Both officers got out of the police car; Camp informed Plair that he was speeding, and that he wished to see his driver's license. Plair stated that he had a license but did not find it in his first wallet, and started to look in another wallet. Camp told him that in order to save time he should stop looking, consider himself under arrest, and follow the police car to the station. Defendants found Plair to be courteous, and did not believe that he was under the influence of alcohol. While they conducted no tests at the scene of the arrest, they did not detect any odor of alcohol, and did not notice anything about his speech or manner to indicate that he had been drinking. The police took down Plair's license number as a matter of regular procedure. Both vehicles proceeded east on Route 30, with Plair following

the police. As the police car went past Cottage Grove, Plair made a sharp right-hand turn and went south on Cottage Grove. After letting westbound traffic pass, the police made a U-turn and gave chase. Camp fired 5 warning shots into the air because the siren was inoperative. The dome light of the police car was on during the chase. The Plair vehicle was about two or three blocks ahead, and driving at an unusually high rate of speed, perhaps 100 miles per hour. Cottage Grove was a winding and hilly road, and the police lost sight of Plair. The last time they saw his vehicle during the chase, his headlights were on. However, a passenger in an automobile travelling on Cottage Grove testified that when Plair passed him, the headlights were off. When the police came to the Sauk Trail intersection, they discovered the Plair car had collided with the Sengelaub car. Sauk Trail on which the Sengelaubs were travelling was a through street, while Cottage Grove had a stop sign.

Defendants learned on the following day that Plair had no driver's license. Dillard denied the testimony of a court reporter that he had given a statement some time after the occurrence that Plair may have been drinking.

A deputy Cook County Sheriff was called to the scene of the accident, and assisted in placing Plair in the ambulance. While doing so, he detected a moderate odor of alcohol on Plair's breath, but was unable to say whether Plair was under the influence of alcohol. He made no further investigation or tests as to Plair's drinking, since the latter was removed to a hospital. The sheriff and his partner found a shotgun in the trunk of Plair's car.

Both sides presented testimony as to proper police procedure in making an arrest. Sergeant Michael Invergo of the Chicago Police Department, an instructor at the police training academy, testified for plaintiff as to the usual and proper manner in arresting a driver who was speeding and whom the officer suspected of being under the influence of alcohol. The proper procedure would

be to place the person under arrest, secure his vehicle, and transport him to the nearest police station. If the violator is unable to produce a driver's license he should not be allowed to drive. A reasonable police officer would not fire shots in the air or at a traffic violator.

Terrance Dougherty, Chief of the Traffic Division of the Chicago Police Department, testified as an expert witness for defendants that an ordinary traffic violator should be allowed to drive his own car to the police station to post bond. If the violator did not have a license, good police procedure would require that the officer obtain some other identification and determine the ownership of the vehicle.

Plaintiff first contends that the trial court committed prejudicial error in giving defendants' instruction No. 7. The instruction, IPI Instruction 12.04, is as follows:

> "More than one person may be to blame for causing an injury. If you decide that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiff's decedents, it is not a defense that some third person who is not a party to the suit, may also have been to blame.

> "However, if you decide that the sole proximate cause of injury to the plaintiff's decedents was the conduct of some person other than the defendants, then your verdict should be for the defendants."

■ Plaintiff properly argues that the second paragraph of the instruction should be given only when there is evidence that a third person was the sole proximate cause of the occurrence. However he argues further that in the instant case Plair's conduct could not be considered the sole proximate cause of the accident, and that the court should have given the jury only the first paragraph of the instruction. With this latter contention we disagree.

We recognize that an intervening criminal act does not necessarily break the causal connection between the original negligent act and the injury if the intervening act is probable and foreseeable. Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74 (1954). And in the Ney case, the court held that whether an intervening criminal act was foreseeable depends upon the circumstances of the case, and therefore whether the injury was a proximate cause of the original negligence is ordinarily a question of fact.

However in Anderson v. Jones, 66 Ill App2d 407, 213 NE2d 627 (1966), this court at page 412 set forth the following salient factors to be considered in determining whether an intervening act was the proximate cause of the injury:

". . . (a) lapse of time; (b) whether the force initiated by the original wrongdoer continued in active operation up to the injury for which recovery is sought; (c) whether the act of the intervenor can be considered extraordinary rather than usual or normal and (d) whether the intervening act was a normal response to the situation created by the wrongdoer or an extraordinary response."

In the instant case, Plair's conduct was not, as claimed by plaintiff, an ordinary flight from arrest with which police officers are constantly faced. He had been stopped for a traffic violation, and had submitted to the officers quietly and courteously. There was also testimony, although contradicted, that he had not been drinking. As directed by the police officers, he followed the squad car for some distance before attempting to flee. During the ensuing chase, he drove at speeds of 100 miles per hour, and turned off his headlights before the collision. Under those facts and circumstances, Plair's acts could be considered an extraordinary response to the conduct of the police officers in permitting him to drive to

227

the police station. A jury could well determine that Plair's conduct was the sole proximate cause of the injury, and the trial court was justified in giving the instruction in its entirety. The jury was also instructed as to the definition of proximate cause. We find no error in the giving of instructions.

Plaintiff next contends that certain remarks made by counsel for defendants in his opening statement constituted prejudicial error. He stated as follows:

> "Because, although this is a very tragic, tragic occurrence and I am also a parent, and I am sure many of you in my questioning are also parents. But the evidence will show that these gentlemen, the defendants, too are parents and I don't believe that you, after the evidence is heard and the laws applied, have the right to shift the burden to these gentlemen and their children for this tragic occurrence."

■■ Plaintiff offered no objection to the statement at the time nor did he make a motion for a mistrial. Ordinarily where no timely objection is made to improper argument, any error is waived. Cochran v. Parker, 91 Ill App2d 56, 233 NE2d 443 (1968). However, as plaintiff points out, if counsel engages in conduct so prejudicial and reprehensible that the other party cannot receive a fair trial, a reviewing court will consider such assignments of error even though no objection was made and no ruling made or preserved in the trial court. Muscarello v. Peterson, 20 Ill2d 548, 170 NE2d 564 (1960); Belfield v. Coop, 8 Ill2d 293, 134 NE2d 249 (1956). In the case at bar, we do not consider the reference by defense counsel to defendants' children in his opening statement to have been of such a nature or so prejudicial that it could be considered by this court as reversible error without objection having been made. This is particularly

true since these remarks were made in reply to an opening statement made by counsel for plaintiff in which he cried while stating that the deceased parents would never return to the two minor children. We believe that any error was waived by failure to object.

Cases cited by plaintiff in support of its contention that it is not necessary to make an objection to preserve the error are all distinguishable from the instant case. In the Belfield case, supra, counsel in argument referred to defendants at various times as thieves and defrauders, continually belittled opposing counsel, and inferred that he was not reputable. In the Muscarello case, supra, an employee of defendant deleted from a medical report furnished to plaintiff a paragraph indicating that there was a causal connection between plaintiff's injuries and the accident in question. In Sommese v. Maling Bros., Inc., 36 Ill2d 263, 222 NE2d 468 (1966) counsel improperly informed the jury that his opponent had "slipped" in a special interrogatory, and also improperly explained the meaning of the special interrogatory.

■ As we have stated, counsel for plaintiff made no objection to the remarks in the opening statement. The record reveals that the opening statements were made on Friday afternoon. On the following Tuesday, after much of plaintiff's case had been presented, counsel for plaintiff first called the court's attention to the comment about defendants' children which had been made in the opening statement. He argued to the trial court that these remarks by defense counsel amounted to informing the jury that defendants had no insurance, and that he should be allowed to give an instruction that defendants were indemnified by the Village and that he should also be allowed to so argue to the jury. At the instructions conference, the trial judge refused to give such an instruction, and refused to allow counsel for plaintiff to refer to insurance in his closing argument. We find that

the trial judge ruled properly in finding that the reference to defendants' children was not an attempt by the defense to interject insurance in the case, but rather a response to an emotional opening statement made by counsel for plaintiff. To have allowed plaintiff to argue the presence of insurance or indemnification would have compounded a harmless error to which plaintiff had made no objection.

██ Plaintiff also argues that counsel for defendant committed prejudicial error in closing argument when he commented without objection by plaintiff, that Plair, who was the sole cause of the deaths, had not been sued. Prior to suit, Plair's insurance carrier had paid plaintiff $18,000 in exchange for a covenant not to sue. As we have noted, defendants were entitled to argue that Plair alone was at fault. While the argument that Plair was not sued was improper, in the absence of a timely objection, the error was not so prejudicial as to prevent the plaintiff from receiving a fair trial. See Hendler v. Wolozin, 105 Ill App2d 132, 245 NE2d 74 (1969).

██ Plaintiff next contends that the trial court committed reversible error in restricting the attendance of the two Sengelaub children at the trial. The record reveals that both boys were presented to the jury while their grandfather was testifying, and that they left the courtroom with him at the conclusion of his testimony. The record also indicates that this procedure was not only acceptable to plaintiff, but that in fact, plaintiff suggested that this be done, so that the boys would not disrupt the court proceedings. Plaintiff cannot now complain that such a procedure was improper.

██ Finally, plaintiff argues that the verdict was against the manifest weight of the evidence. As we have stated, under the facts and circumstances of the instant case, the jury could determine that the sole proximate cause of this accident was the conduct of James

Plair. The verdict was not against the manifest weight of the evidence.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DRUCKER, P. J. and STAMOS, J., concur.