Wanda Parker ARMSTRONG, as Special Administrator of the Estate of Patricia Weller, Deceased, Incompetent, Plaintiff,

v.

Wayne MUDD, Officer Thomas Hendrickson, Sergeant Damon Barley, Sangamon County, Illinois, Officer John J. Greenan II, Officer Harland Sanders, Officer Scott Allin, and City of Springfield, Illinois, Defendants.

No. 85–3478.

United States District Court, C.D. Illinois, Springfield Division.

Feb. 26, 1987.

Alexandra de Saint Phalle, Springfield, Ill., for plaintiff.

Frederick P. Velde, Robert E. Gillespie, Sue Myerscough, Springfield, Ill., Asher Geisler, Decatur, Ill., for defendants.

## OPINION ORDER

MILLS, District Judge:

High speed chase.

The fleeing criminal suspect hits decedent's car.

Her administrator sues the police.

The police all move for summary judgment.

Motions allowed.

Plaintiff, special administrator for the estate of Patricia Weller, brings this lawsuit pursuant to the Illinois Wrongful Death, Ill.Rev.Stat. ch. 70, ¶ 1, and Survival Acts, Ill.Rev.Stat. ch. 110½, ¶ 27–6.[1] She seeks

---

**1.** The Wrongful Death Act reads in relevant part:

   Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and

recovery in sixteen counts for the injury to and subsequent death of the deceased as a result of a 1982 vehicle collision with Defendant Wayne Mudd, a fleeing criminal suspect.[2] The complaint alleges negligence not only against Mudd, but also the pursuing patrolmen and their respective employers.[3]

Jurisdiction is premised upon diversity of citizenship, 28 U.S.C. § 1332(a)[4], and Illinois substantive law governs. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Now before the Court are the Defendant police officers' motions for summary judgment under Fed.R.Civ.P. 56. The underlying events appear not in dispute. Rather, the query is whether such circumstances give rise to genuine issues of material fact regarding (1) the officers' alleged breach of the appropriate care standard, and (2) the proximate cause of the deceased's peril.

The Court finds that they do not. Summary judgment is proper.

### Background

At approximately 6:00 a.m. on May 8, 1982, Springfield Police Officers John Greenan and Harland Sanders responded separately to a report of theft in progress at the OK Corral, a used car lot near the intersection of Taylor Avenue and Stevenson Drive in the southeast corner of the city. According to the complaint, both men observed the suspect, later identified as Wayne Mudd, enter a green Mercury Marquis and begin to flee. Siren and lights activated, Officer Greenan pursued Mudd north on Taylor, followed by Officer Sanders. Subsequently, the pursuit proceeded east on South Grand Avenue, southeast on Rochester Road, and south on Dirksen Parkway. Returning to Stevenson Drive, the accused then advanced west to Sixth Street, where he traveled north. (*See* Appendix.) During this period, both patrolmen were in constant communication with the city's dispatch officer. Greenan relayed the suspect's license number and requested assistance.

As a result, County Officer Thomas Hendrickson, accompanied in his squad car by Sergeant Damon Barley, received notice of the pursuit via the Illinois State Police Emergency Radio Network. Proceeding to the intersection of Sixth and Ash Streets, they joined in a roadblock with two city units.

Apparently spotting the barrier, Mudd turned west onto Cornell Avenue, one block south of Ash. Unable to make the corner, Officer Greenan progressed north to Ash where his attempted left turn resulted in the police car striking the curb. His vehicle inoperable, Greenan abandoned the chase.

In the meantime, Officer Sanders had advanced west onto Broad Place, one street prior to Cornell, hoping to cut off the fleeing suspect. He then heard over the radio that Mudd was northbound on Fourth Street. Having lost his quarry, Sanders shut off his siren and slowed down. He, too, abandoned the chase.

---

in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. Ill.Rev.Stat. ch. 70, ¶ 1.

Likewise, the survival statute states: "In addition to the actions which survive by the common law, the following also survive: ... actions to recover damages for an injury to the person (except slander and libel),...." Ill.Rev.Stat. ch. 110½, ¶ 27–6.

**2.** In the wrongful death counts, Plaintiff, on behalf of the deceased's two minor sons and herself as mother, seeks compensation in excess of $15,000 for the deprivation of love, affection, society, services, and earnings.

Similarly, she requests a like amount in the survival claims for decedent's loss of income and injury compensation during a three year period of incapacitation.

**3.** The parties agree that the police officers were acting within the scope of their employment at the time of the occurrence.

**4.** Complete diversity is present in this instance. All the Defendants reside in Illinois while the special administrator and estate beneficiaries are domiciled in either California or Washington. *See Wilsey v. Eddingfield*, 780 F.2d 614 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1660, 90 L.Ed.2d 202 (1986).

Officer Hendrickson and Sergeant Barley, however, continued the pursuit when Mudd averted the roadblock. Followed by city officer Scott Allin, the county car proceeded to Cornell, becoming the lead unit behind the suspect. According to Allin, the chase endured at a speed of approximately 45 m.p.h.[5] Both cars activated their emergency equipment—flashing lights and sirens.

Within a few seconds, Mudd had gained over a one block lead on Officer Hendrickson. Officer Allin reported that when the county car reached Laurel Street, on which the suspect had proceeded west, both patrolmen had lost sight of the Mercury. Allin then terminated his emergency apparatus and withdrew from the hunt.

The uncontradicted police report filed by Officer Hendrickson and supported by his deposition describes the final seconds of Mudd's nine mile adventure:

R/O [Reporting Officer] turned onto Cornell just in time to see Mudd turn north on 4th St. R/O almost came to a dead stop at 5th St. due to parked vehicles on 5th St. blocking R/O's view. R/O then proceeded across 5th St. to 4th St. As R/O turned north on 4th, R/O saw Mudd's vehicle already across Ash St. and still proceeding north at a high rate of speed on 4th St. R/O approached Ash and again came to almost a complete stop as two (2) autos were approaching side by side on Ash from the west. These two (2) vehicles stopped and R/O crossed Ash still northbound on 4th. R/O then saw the Mudd vehicle turn west on Laurel. Immediately Sgt. Barley reported, on County channel one (1) that the suspect vehicle was westbound on Laurel. R/O then said, "we've lost him, Damen". When the Mudd vehicle turned west on Laurel, R/O had just crossed Ash St. At that time R/O believed that the only chance of keeping

track of the vehicle was if another officer was on Laurel and could see the Mudd vehicle. R/O proceeded to Laurel on 4th and looked west but did not see the Mudd vehicle on Laurel. R/O drove west on Laurel crossing the 3rd St. railroad tracks and saw the Mudd vehicle sitting in a gasoline station lot at Spring and Laurel Streets. R/O quickly proceeded to Spring and Laurel as Sgt. Barley radioed the message of a traffic accident involving the suspect vehicle.

Mudd had collided with an auto driven by Patricia Weller at the intersection of Spring and Laurel Streets.

The decedent was rendered incompetent for the duration of her life.

She died July 28, 1985.

### Summary Judgment

Under Rule 56(c), summary judgment should enter "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of *some* factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir.1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party

---

**5.** The Court notes that counsel for the city and its officers has done a less than desirable job of supplementing the record with the relevant facts. Thus, the events leading to the accident have been extracted in large part from the depositions of the county officer and Plaintiff's expert.

The Court reminds all litigants that motions for summary judgment are fact-based. Counsel should set forth the circumstances underlying the dispute in a memorandum, supported by the appropriate affidavits, depositions and documents. Only then can the Court apply the law.

producing it, upon whom the *onus* of proof is imposed." *Anderson,* 106 S.Ct. at 2511, *quoting Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872); *see also Celotex Corp. v. Catrett,* ——— U.S. ———, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In other words, the Court must consider the evidence "through the prism of the substantive evidentiary burden" in deciding Defendants' motion. *Anderson,* 106 S.Ct. at 2513; *Carson v. Allied News Co.,* 529 F.2d 206, 210 (7th Cir.1976). Applying this standard, the Court now turns to an analysis of the case at bar.

*Discussion*

In essence, Plaintiff maintains each officer involved in the chase was negligent in pursuing Mudd through the streets of Springfield on a mere suspicion of theft.[6] She claims the Defendants failed to exercise due care in disregarding proper police procedures, thereby jeopardizing the lives of innocent people. As a result of their actions, Plaintiff concludes the officers proximately caused the death of Patricia Weller.

With her conclusion, however, no reasonable jury could agree.

A. The Standard of Care

■ The Administrator is correct in stating that police officers must exercise a degree of care for the safety of other persons when engaged in the pursuit of a suspected law violator. This principle has been established in Illinois at least since the decision in *Moore v. Cook,* 22 Ill.App.2d 48, 159 N.E.2d 496 (4th Dist.1959). *See also Sundin v. Hughes,* 107 Ill.App.2d 195, 246 N.E.2d 100 (1st Dist.1969). In fact, the Illinois General Assembly had codified the precept together with certain privileges applicable during a police chase at Ill.Rev. Stat. ch. 95½, ¶ 11–205:

> (b) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law

... may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

> (c) The driver of an authorized emergency vehicle may:
> 1. Park or stand, irrespective of the provisions of this Chapter;
> 2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be required and necessary for safe operation;
> 3. Exceed the maximum speed limits so long as he does not endanger life or property;
> 4. Disregard regulations governing direction of movement or turning in specified directions....

> (e) The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

*See also Id.* ¶ 11–907(b).

As indicated in subsection (e) of Paragraph 11–205, operators of emergency autos are generally required to abstain only from reckless or willful and wanton conduct. *See* Ill.Rev.Stat. ch. 85, ¶ 2–202. Nevertheless, where the public employer is insured for the misconduct of its employees, the issuing company waives the right to deny liability based upon any defense or immunity established by the legislature. *Id.* ¶ 9–103(c).

In this instance, Plaintiff alleges and Defendants admit that both Sangamon County and the City of Springfield are insured. Thus, reasonable care under the circumstances is the measure by which the police officers' actions must be judged. *Cf. Sundin,* 107 Ill.App.2d at 200–01, 246 N.E.2d at 104.

Having established the applicable standard, the next question becomes whether

---

**6.** Proof of negligence consists of evidence showing a duty to the injured party, a breach of that duty and an injury proximately resulting from the breach. *Neering v. Illinois Central R.R. Co.,* 383 Ill. 366, 382, 50 N.E.2d 497, 504 (1943).

the Administrator presents a factual issue as to the Defendants' breach of duty.

## B. Reasonable Care

The Court is well aware that the determination of a breach of duty is ordinarily a question of fact for the jury. *Jardine v. Rubloff,* 73 Ill.2d 31, 43, 21 Ill.Dec. 868, 873, 382 N.E.2d 232, 237 (1978). Still, a general principle is not a universal rule. If all of the evidence viewed in an aspect most favorable to the opponent so overwhelmingly favors the movant that no genuine issue of material fact exists, summary judgment is appropriate. *See Breck v. Cortez,* 141 Ill.App.3d 351, 95 Ill.Dec. 615, 490 N.E.2d 88 (2d Dist.1986).

As noted, the underlying facts are uncontradicted. The Plaintiff, however, maintains that a factual issue arises from the deposition of Ken Katsaris—an expert whose qualifications are too lengthy to mention. He believes the Defendants violated departmental policy in pursuing a suspect, accused only of theft, through an urban area. His opinion is that high speed chases are seldom justified.

■ Yet, neither the Administrator nor her expert have produced the regulations of the respective police departments, although the burden is upon them to do so.[7] Apparently, the relevant guidelines are quite general, referring only to the use of due care in the line of duty.[8] *Compare Breck,* 141 Ill.App.3d at 360–61, 95 Ill.Dec. at 621–22, 490 N.E.2d at 94–95. Coupled with the clear legislative policy reflected in Ill.Rev.Stat. ch. 95½, ¶ 11–205, recognizing the need for prompt apprehension of suspected law violators, and the privileges applicable to emergency vehicles,[9] such inexact rules cannot support the Plaintiff's position. No reasonable jury could so find.

■ Indeed, Plaintiff accurately points out that the patrolmen ran red lights, proceeded the wrong direction down one-way streets, and surpassed the speed limit. But the Illinois General Assembly has deemed it proper for police officers to so act when in pursuit of a fleeing criminal so long as they exercise due regard for the safety of others. The events indicate the Defendants used nothing less than reasonable care under the circumstances. Officers Greenan, Sanders, and Allin of the city force all utilized their sirens and lights while engaged in the chase. The record simply does not support the inference that they unreasonably endangered the lives of innocent persons. Likewise, Deputy Hendrickson has stated without contradiction that after assuming the reins he lost Mudd when forced to reduce his speed on Fourth Street due to the presence of other motorists.

Furthermore, Sergeant Barley was merely riding in the county squad car at the time of the occurrence. Plaintiff fails to enlighten the Court as to her theory of recovery against him.

■ Reduced to a minimum, Plaintiff claims that pursuing a criminal through city streets on the suspicion of simple theft is negligence *per se* where the police officer possesses a description of the culprit and the vehicle's license number. Such an assertion, however, is not—nor should it be—the law in Illinois. As one federal court has stated:

> We must not forget that the primary duty was upon the pursued to stop.... It is hardly necessary to point out the overriding public policy of apprehending criminals as rapidly as possible, thus

---

**7.** The burden unquestionably rests upon the Plaintiff to prove the Defendants' breach of duty by a preponderance of the evidence. *Hayes v. Alsburg,* 52 Ill.App.3d 355, 357, 10 Ill.Dec. 180, 182, 367 N.E.2d 568, 570 (4th Dist.1977). If her theory of recovery is based upon the violation of departmental policy, the Court cannot understand why she fails to provide the applicable guidelines unless they do not clearly support her position.

As the Supreme Court has noted: "The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

**8.** *See* Katsaris deposition at 95–96.

**9.** *See supra* subsection A.

eliminating continued criminal acts, as a factor outweighing the undesirable consequences of holding an officer liable for the damages sustained by a third party. . . .

We are not prepared to hold an officer liable for damages inflicted by the driver of a ... vehicle whom he was lawfully attempting to apprehend for the fortuitous reason only that the criminal drove through an urban area. To do so would open the door for every desperado to seek sanctuary in the congested confines of our municipalities, serene in the knowledge that an officer would not likely give chase for fear of being liable for the pursued's recklessness.

*State v. Fidelity & Casualty Co.,* 263 F.Supp. 88, 90–91 (S.D.W.Va.1967). Undoubtedly, the officers' actions caused Mudd to drive recklessly. Still, the conclusion that the patrolmen are responsible for the result of the criminal's behavior does not follow. "Police cannot be made insurers of the conduct of the culprits they chase." *Bailey v. L.W. Edison Charitable Foundation,* 152 Ind.App. 460, 468, 284 N.E.2d 141, 146 (3d Dist.1972). The policy of safeguarding life and property by apprehending a fleeing suspect who, by electing to run, recklessly endangers innocent parties must be balanced against the possibility of injury upon commencing the pursuit. In other words, an officer's duty to drive with due care must be gauged in relation to the surrounding circumstances.

In this instance, the Court concludes as a matter of law that the Plaintiff failed to meet her substantive evidentiary burden with regard to the patrolmens' conduct.[10] Their duty was to suppress the offense and apprehend the offender. This they did by utilizing due care under the circumstances. A passage from a recent Illinois Appellate Court opinion is fitting:

> While it is most unfortunate that bystanders are sometimes innocently involved and injured by the police in the performance of their duties, such emotional and understandable human considerations are not a substitute for proof of negligence. Such proof is lacking in the instant case.

*Breck,* 141 Ill.App.3d at 361, 95 Ill.Dec. at 622, 490 N.E.2d at 95, *quoting Stanton v. State,* 26 N.Y.2d 990, 991, 311 N.Y.S.2d 28, 29, 259 N.E.2d 494, 495 (1970).[11]

Viewing the facts in a light most favorable to the Plaintiff, no reasonable jury could find that the officers breached their duty of due care. As a consequence, a discussion of proximate cause seems unnecessary. Nevertheless, since the issue provides an additional basis for the grant of summary judgment in this controversy, the Court will comment upon it briefly.

#### C. Proximate Cause

Like the breach of duty, the question of proximate cause is generally also for the jury. *Felty v. New Berlin Transit,* 71 Ill.2d 126, 130, 15 Ill.Dec. 768, 770, 374 N.E.2d 203, 205 (1978). But where the facts are undisputed and reasonable men could not differ as to the inferences to be drawn therefrom, the issue may be decided as a matter of law. *Id.* at 130, 15 Ill.Dec. at 769, 374 N.E.2d at 204. This is such a case.

---

**10.** Plaintiff cites *Brooks v. Lundeen,* 49 Ill. App.3d 1, 7 Ill.Dec. 262, 364 N.E.2d 423 (2d Dist.1977), as controlling. The Court, however, finds that case readily distinguishable. There, the officers directed an approaching motorist to park on the edge of the roadway so as not to interfere with a roadblock. Subsequently, the motorist was killed when the fleeing criminal ran head on into his car attempting to avoid the barrier. The city and its officers were held responsible. The breach of duty occurred when the patrolmen failed to direct the decedent from the roadblock area although they easily could have done so. Thus, unlike the instant case, the Defendants' actions directly placed the decedent in peril.

**11.** In *Breck,* the Court applied the willful and wanton standard of Ill.Rev.Stat. ch. 85, ¶ 2–202. Apparently, the defendant municipalities had not procured insurance and hence the immunity and defense waiver of ¶ 9–103(c) was inapplicable.

Nevertheless, the Court cited *Stanton* with approval. In that case, the New York Court of Appeals affirmed the dismissal of the administrator's wrongful death claim against the state despite uncontradicted expert testimony that the officer had usurped accepted police procedures. *Stanton,* 311 N.Y.S.2d at 29, 259 N.E.2d at 497 (Burke, J., dissenting).

Applying a simplified "but for" test, Plaintiff maintains the officers' conduct was a concurrent proximate cause of the deceased's injuries and subsequent death. In other words, if the police hadn't chased the fleeing suspect, the collision would not have occurred. The Administrator's analysis, however, is unconvincing. Rather, this Court is persuaded by the recent Illinois decision in *Huddleston v. City of Charleston*, 144 Ill.App.3d 1077, 99 Ill.Dec. 17, 495 N.E.2d 82 (4th Dist.1986).

In that case, the decedent, a motorcycle passenger of the fleeing culprit, was killed when the driver lost control attempting to avoid a police roadblock. Finding no evidence supporting proximate cause, the trial judge directed verdicts for the patrolmen and municipality. The appellate court affirmed, noting that the defendants did not put plaintiff's decedent at peril:

> [The criminal's] reckless disregard for his own safety, the safety of his passenger, the safety of other drivers, his disregard for the various licensing rules, and his engaging in a high speed police chase, evidences such negligence that it is clear that his actions were the original wrong....
>
> The officers' conduct was reasonably foreseeable. As such, their conduct could not be the proximate cause of the accident.

*Id.* at 1080–81, 99 Ill.Dec. at 19–20, 495 N.E.2d at 84–85; *see also Downs v. Camp*, 113 Ill.App.2d 221, 252 N.E.2d 46 (1st Dist. 1969).

■ The situation confronting this Court is similar. Clearly, the direct and proximate cause of Patricia Weller's death was the utter disregard by Mudd of authority in running from the police and his lack of due care in recklessly operating his vehicle. "The officers would have been derelict in their duty had they not pursued the escapee in the reasonable manner in which they did pursue him." *United States v. Hutchins*, 268 F.2d 69, 72 (6th Cir.1959).

■ Moreover, the facts establish that at the time of the accident, all the city officers had abandoned pursuit. Likewise, the county officials had significantly reduced their speed and lost sight of Mudd. Thus, even assuming *arguendo* that the patrolmen were initially negligent, such neglect is too remote to be considered a proximate cause of the mishap. "Any danger created by [the officers] had spent itself and there was no causal connection between it and what followed." *Schatz v. Cutler*, 395 F.Supp. 271, 275 (D.Vt.1975).

*Ergo*, for all the aforementioned reasons, the motions for summary judgment filed by the Defendant Police Officers and their respective employers are ALLOWED.

The issue of Defendant Wayne Mudd's negligence remains for trial.

IT IS SO ORDERED.

APPENDIX

○ Pursuit began