ESTATE OF Todd C. WARNER,
etc., Plaintiff,

v.

UNITED STATES of America, et
al., Defendants.

No. 85 C 3200.

United States District Court,
N.D. Illinois, E.D.

July 3, 1990.

Larry R. Wikoff, Chicago, Ill., for plaintiff.

Ann L. Wallace, Asst. U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This District Court has established a task force to assist in the disposition of more-than-three-year-old cases on the calendars of any of the judges in this District. As part of that task force's activity, this Court has volunteered to try cases pending on the calendars of its colleagues, and this action (pending on the calendar of Honorable Charles Norgle) has been referred for that purpose.

Following that referral this Court has supervised the preparation of a final pretrial order ("FPTO") pursuant to which the

case is now ready for trial.[1] It now develops, through a motion in limine (submitted following the January 22, 1990 entry of the FPTO) as to the admissibility of expert testimony on behalf of the plaintiff ("Warner"), that resolution of that motion may shorten the trial appreciably—or perhaps even permit the action to be disposed of via summary judgment rather than trial. This memorandum opinion and order deals with that motion.

### FACTS

Although the facts (both agreed to and contested by the parties) are set out at greater length in the FPTO, only a skeletal version is necessary for consideration of the current motion. Todd Warner (whose estate is the plaintiff here) was killed in a tragic way when the car he was driving collided with an auto driven by teenager Rixecker.[2] Suit against the United States under the Federal Tort Claims Act ("FTCA") is based on Warner's contention that Great Lakes Police Officer Lester Caldwell ("Caldwell")—an employee of the federal government—was negligent (1) in following Rixecker after he had been told by the driver of a car that was stopped behind the one driven by Rixecker that the latter was (a) a runaway, (b) had tried to commit suicide, (c) was underage, and (d) had no driver's license and (2) in then continuing to pursue Rixecker after Caldwell had seen her make an illegal U-turn, almost hit a pedestrian and run a red light. It was during Rixecker's high-speed attempt to flee that she collided with Todd Warner's car.

### EXPERT TESTIMONY

This Court is called upon to deal with a narrow issue rather than with the general admissibility of expert testimony to aid the trier of fact, as prescribed in Fed.R.Evid. ("Rule") 702:

**Testimony by Experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Because the FTCA permits no jury trials against the United States, this Court—as the "trier of fact"—should logically be in the best position to make that judgment. And given the nature of the events described in the FPTO and the nature of the anticipated testimony from the proposed "expert" as set out in the current briefing, this Court does not view that testimony as meeting the test stated in Rule 702.

Nonetheless, it seems appropriate to take a look at the legal question whether such a third-party opinion—even though this Court might view it as not only unneeded but also unhelpful—is subject to some rule of law that might mandate the opinion's being *listened to* (even if not agreed with). Accordingly this opinion will later turn to a consideration of the relevant substantive case law in the course of its discussion.

■ At the outset, however, this Court finds itself puzzled by one aspect of the parties' current discussion—that having to do with the rule of conduct by which Officer Caldwell's (and hence the United States') actions must be tested. Even though the United States refers at page 2 of its current motion to "due care," which is ordinarily viewed as a synonym for a negligence test, that seems wholly inappropriate for the reasons set out in the government's proposed Findings of Fact and Conclusions of law included in the FPTO. On the other side of the fence, Warner's FPTO submission urges that straight negligence *should* be the test.

1. Codefendant Stephanie Rixecker ("Rixecker"), who is not now represented by counsel, has not participated in preparation of the FPTO. What her former counsel has stated during the most recent status hearings is his intention to attend the trial to assist Rixecker in her possible defense, though not as counsel of record.

2. Rixecker, who was below the age permitted for issuance of a driver's license in Illinois, had taken her family's car without authorization.

For that reason a brief threshold review of the appropriate standard of care—which somewhat ties into the expert testimony issue—is in order:

1. Under the FTCA, Illinois law provides the rules of decision as to the United States' potential liability (28 U.S.C. § 2674 ("Section 2674") says that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . . .").

2. Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, Ill.Rev.Stat. ch. 85, ¶ 2–202:

> A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.[3]

That standard of care links up with a coterminous standard of care for the employer of any such public employee, *id.* ¶ 2–109:

> A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.

---

**3.** That statute used to refer to "willful and wanton negligence" until it was amended in 1986 by substituting "conduct" for "negligence." Thus *the operative standard at the time of the occurrence at issue here was the pre-amendment version,* when "willful and wanton" was expressly characterized as a greater degree of negligence.

**4.** Warner's submissions in the FPTO urge the applicability of a mere negligence standard by citing to the selfsame statute. But the state court decisions referred to later in this opinion specifically apply the "willful and wanton conduct" standard even when they refer to that emergency vehicle statute. In the only even arguable exception to that proposition, *Sundin v. Hughes,* 107 Ill.App.2d 195, 201–02, 246 N.E.2d 100, 104 (1st Dist.1969), the court specifically noted that it was not considering the other statute quoted in this text paragraph (the one in ch. 85, ¶ 2–202) because the court was there dealing with an accident that had occurred *before* that statute took effect. But to return to the emergency vehicle statute itself, its language *sets out a listing of traffic laws that the drivers* of emergency vehicles may disregard or violate, then follows that list with this provision (ch. 95½, ¶ 11–205(e)):

And the same higher-than-mere-negligence standard is prescribed by the more specialized emergency vehicle provisions of Ill.Rev.Stat. ch. 95½, ¶ 11–205.[4]

3. It would certainly appear that the "private individual" to which the United States is analogized under Section 2674 is the corresponding public employer under Illinois law. After all, the employee for whose conduct the United States is sought to be held vicariously liable here is a *police officer* driving an emergency vehicle. No "private individual" in the sense of a general member of the public is himself or herself, or has any comparable employee, involved in the use of an emergency vehicle in hot pursuit under comparable circumstances—thus giving rise to the greater risks that are inherently attendant upon such use. That strongly suggests that the analogous "private individual" spoken of in the FTCA is most logically the Illinois employer of just such an employee: a municipal employer.

That last-mentioned reading of "in the same manner and to the same extent as a private individual under like circumstances," then, seems the rule that logic

> The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

By its terms that sets a standard for the direct consequences of actual driving by the operator of the emergency vehicle ("due regard for the safety of all persons") that on its face differs from any other effects flowing from the driver's conduct ("the consequences of his reckless disregard for the safety of others"). Both the latter language and the state court cases applying it (as well as ch. 85, ¶ 2–202) treat "reckless disregard" as synonymous with "willful and wanton" in establishing the measure of liability of the emergency vehicle driver. In that limited sense there might be some force to the later-referred-to legal distinction that the United States seeks to draw here between the person who is injured or killed by the car driven by the officer pursuing a violator and the person who is injured or killed by the car driven by the pursued violator—a distinction, however, not stated in that form by the Illinois cases (see later discussion).

would prescribe. But is it reflected in the authorities?

As might be expected, that question is not one in which the decisionmaker must write on a clean slate. For example, *Louie v. United States*, 776 F.2d 819 (9th Cir. 1985) dealt with a situation in which the United States was sued for damages caused by an off-duty soldier. *Louie, id.* at 825 said this:

> The government contends that reference to Washington law, setting forth the liability of state and municipal entities to establish the government's standard of liability under the FTCA, is both necessary and proper. We agree.
>
> The circumstances here involve government employees in a law enforcement function. Questions as to the power and authority to arrest, to maintain custody, and to lawfully restrict a person's liberty, are unique to the law enforcement function. Because private persons do not wield such police powers, the inquiry into the government's liability in this situation must include an examination of the liability of state and municipal entities "under like circumstances."

And more recently *Louie* was quoted and followed in *Crider v. United States*, 885 F.2d 294, 296–97 (5th Cir.1989) (citations omitted):

> This [*Louie*'s just-quoted] interpretation of "like circumstances" seems compelling. We must disregard state rules of sovereign or official immunity in analyzing the scope of FTCA liability, because these conflict with Congress's analogy to

"private person" liability under § 2674. Similarly, the performance of a "uniquely governmental function" has repeatedly been rejected as a defense to FTCA liability. These rules should not, however, require us to ignore a state's law enunciating negligence principles based on "like circumstances" without regard to local sovereign immunity.

In that dichotomy between the examination of the liability of municipal entities "under like circumstances" (which is to be adhered to under the FTCA) and state rules of official immunity (which are to be disregarded under the FTCA), this Court holds that the setting of a higher standard to be proved by a plaintiff (willful and wanton negligence, rather than mere negligence) must be put into the former category of "like circumstances"—at least where the operation of an emergency vehicle in police pursuit is involved. There the driver's duty of care is affected by the special circumstances, rather than being extinguished entirely (as in the "no duty of care" rule that was rejected for FTCA purposes, for example, in *United States v. Muniz*, 374 U.S. 150, 164–65, 83 S.Ct. 1850, 1858–59, 10 L.Ed.2d 805 (1963)).[5] Unless there is something missing in the just-completed line of analysis, then, the United States can be held liable in this case only if Caldwell's conduct may be labeled "willful and wanton."[6]

■ To return to the current question of expert testimony, Warner's responsive memorandum to the government's motion simply:

5. It might perhaps be suggested that the United States—the sovereign—should be analogized instead to its counterpart in state government—the State of Illinois, the sovereign there. On that view the measure of the United States' tort liability could be likened to that accepted by the State of Illinois in establishing the Illinois Court of Claims, which has imposed liability in ordinary automobile accident cases on a negligence standard (see 33A I.L.P. *State Government* § 113, at 465 n. 26 and cases cited there). But even apart from the fact that those cases did not treat with the comparable emergency-vehicle hot-pursuit situation, any such sovereign approach would really be at odds with Section 2674's reference to "private individual," which represents the Congress-specified federal version of the waiver of sovereign immunity. In-

deed, in an odd way that would turn the principles announced in such cases as *Muniz* on their head. It would rather seem that the analogy in the text—drawing the parallel between one public employer (the United States) and another public employer "under like circumstances" (all Illinois governmental bodies *except* for the Illinois sovereign itself)—is the apt one.

6. Even having said all that has gone before, however, this Court is constrained to observe that even if the relevant standard *were* one of straight negligence or due care rather than one of willful and wanton negligence, this Court would reach the same conclusion as expressed in the remainder of this opinion.

1. urges (a) that Rule 702 rather than state law decisions governs the question at issue and (b) that federal law "narrowly limits an Appellate's [sic] Court's authority to second guess trial courts on questions of admissibility," quoting (except for the typographical error) *Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 566 (6th Cir.1985);

2. seeks to reject as inapropos all the cases cited by the government except *Brooks v. Lundeen*, 49 Ill.App.3d 1, 7 Ill.Dec. 262, 265, 364 N.E.2d 423, 426 (2d Dist.1977), a case that Warner seeks to distinguish;

3. disputes the government's argument that Warner is attempting to use expert opinion as a substitute for eyewitness testimony; and

4. criticizes the government's citation of *Armstrong v. Mudd*, 655 F.Supp. 853 (C.D.Ill.1987) as nonbinding precedent (on the ground that it is a District Court decision) and also the government's citation of *Armstrong*'s affirmance by an unpublished order sub nom. *Marine Bank of Springfield v. Hendrickson*, 843 F.2d 500 (7th Cir.1988) (on the ground that any citation of that affirmance is "totally improper and constitutes a direct contravention of CIRCUT [sic] RULE 53 SEVENTH CIRCUIT COURT OF APPEALS").

Little extended analysis of those points is required to demonstrate why Warner must lose on the current motion.

As for the first subject, it is of course true (but in a major sense irrelevant) that Rule 702 sets the operative evidentiary standard, as this Court has considered all along. What this Court is about to do here is to examine just how the discretion vested in *this* trial court by the Court of Appeals ought to be exercised.

Now to the Illinois case law, which does prescribe the substantive test for a police officer's conduct—something as to which Section 2674 looks to local law to determine the government's liability or lack of it. What the government's memoranda assert

is a claimed distinction that the Illinois courts are said to make in dealing with the potential liability of any police officer for accidents that occur during the officer's pursuit of a fleeing violator—a demarcation between collisions that take place between the police pursuer and the plaintiff (a situation not present here) and collisions that take place between the fleeing violator and the plaintiff (the precise situation involved here).

But that is not in fact the analytical watershed that the Illinois courts have articulated in those terms. What the Illinois cases have rather done—and on a consistent basis—is to reject *as a matter of law*, via the granting of summary judgment, any police liability for a collision between the fleeing violator and the plaintiff under circumstances wholly parallel to those presented here: *Laco v. City of Chicago*, 154 Ill.App.3d 498, 502–09, 107 Ill.Dec. 400, 402–406, 507 N.E.2d 64, 66–70 (1st Dist. 1987); *Breck v. Cortez*, 141 Ill.App.3d 351, 358–61, 95 Ill.Dec. 615, 620–622, 490 N.E.2d 88, 93–95 (2d Dist.1986); see *Huddleston v. City of Charleston*, 144 Ill.App.3d 1077, 1079–81, 99 Ill.Dec. 17, 19–20, 495 N.E.2d 82, 84–85 (4th Dist.1986) and *Armstrong*, 655 F.Supp. at 858–59 (applying Illinois law and following *Huddleston*); and cf. *Arnold v. Village of Chicago Ridge*, 181 Ill. App.3d 778, 130 Ill.Dec. 494, 497, 537 N.E.2d 823, 826 (1st Dist.1989).[7]

As for the third point advanced by Warner, United States R. Mem. 4–8 (which is based on the content of Warner's proffered "expert" deposition and report) is wholly persuasive that such expert testimony—even if it were to be taken into account—would not suffice to establish a material question as to any even arguably actionable misconduct on the part of Officer Caldwell, at least in the face of the case law and the undisputed facts of the occurrence here. No useful purpose would be served by permitting an "expert" to opine, given that consistent line of authority, that Caldwell's undisputed conduct was somehow legally wanting. It would seem that

---

**7.** *Brooks v. Lundeen,* cited and distinguished in each of those later cases except *Laco*—and left

wholly unmentioned there—calls for no change in the analysis stated in the text.

the more appropriate course of action would be for this Court to reject the "expert" testimony as not satisfying Rule 702 *and* also as legally insufficient even if it were to be considered—while at the same time permitting Warner to tender the "expert's" deposition and report in order to make a record.

 Finally, plaintiff's quarrel with *Armstrong* is unavailing. First of all, though it is true that District Court decisions (including of course those of this Court) do not constitute binding precedent, they *can* of course be persuasive. And in this instance *Armstrong* is just one additional authority that applies Illinois case law (which provides the rule of decision) in a way that—like the Illinois cases themselves—this Court *does* find persuasive. And as to the United States' claimed violation of Seventh Circuit Rule 53(b)(2), that Rule simply states:

Unpublished order:

\* \* \* \* \* \*

(iv) Except to support a claim of *res judicata*, collateral estoppel or law of the case, shall not be cited or used as precedent

(a) in any federal court within the circuit in any written document or in oral argument; or

(b) by any such court for any purpose.

Nothing there bars a party from simply advising this Court that a District Court decision, which is not itself subject to any such restriction, has been affirmed on appeal—after all, such affirmance is itself a matter of public record (as already noted, at 843 F.2d 500).

### CONCLUSION

This Court grants the United States' motion in limine to bar the testimony of plaintiff's "expert" witness as not meeting the standard of Rule 702. That determination is of course based on the description set out in the parties' memoranda, so in an important sense it reflects a decision by this Court that the expected testimony would not pose a material (that is, potentially outcome-determinative) question as to

Officer's Caldwell's claimed violation of the relevant standard of conduct even if it were to be considered. Counsel for plaintiff is invited to tender the deposition testimony and the report of the claimed "expert" to establish the appropriate record in that respect. This action is set for a status hearing at 9 a.m. July 16, 1990 to discuss further proceedings in the case.