STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff-Appellee and Cross-Appellant, v. STEFANIE RIXECKER, Defendant-Appellant (Matthew C. Johnston *et al.*, Defendants; Allstate Insurance Company, Defendant and Cross-Appellee).

First District (5th Division)   No. 1—87—2916

Opinion filed May 26, 1989.

Daniel S. Hefter and Clyde M. Hettrick, both of Isham, Lincoln & Beale, of Chicago, for appellant.

James J. Hoffnagle, of Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago, for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

This appeal and cross-appeal arose as a result of a declaratory judgment action in which State Farm Fire and Casualty Company sought a declaration that (1) a policy of automobile liability insurance issued by it to Arnulf Rixecker, the father of defendant Stefanie Rixecker, and a policy issued by Allstate Insurance Company to Morey Sachnoff did not provide liability coverage for an accident which occurred when defendant was driving Sachnoff's car, or (2) that if the policies did provide coverage for the accident, the Allstate policy provided primary coverage and State Farm's policy provided excess coverage. The trial court entered summary judgment in favor of Allstate on May 26, 1987, and summary judgment in favor of State Farm on August 19, 1987, ruling in both instances that defendant Rixecker

was precluded from coverage under the policies because she lacked the permission or consent of the owner or person entitled to lawful possession of the car to drive it when she collided with the other vehicle.

Rixecker appeals only from the order granting State Farm summary judgment, contending that the trial court erred in using an "objective" rather than "subjective" test in determining that she lacked consent to use the Sachnoff car. State Farm, in its cross-appeal against Allstate, argues that should this court find that Rixecker is covered under the policy it issued to Rixecker's father, then such coverage is excess coverage and the policy issued by Allstate to Sachnoff, the owner of the car, provides primary coverage for the accident. Allstate has not filed a brief in answer to State Farm's cross-appeal pursuant to this court's order granting a stay of that appeal until we have disposed of Rixecker's appeal against State Farm. For the reasons set forth below, we affirm.

The record discloses that on April 17, 1983, Rixecker, while driving a 1978 Toyota owned by Morey Sachnoff, collided with a car being driven by Matthew Johnston in North Chicago. As a result, Todd Warner, one of the passengers in the Johnston vehicle, was killed. Warner's administrator subsequently filed a wrongful death action against Rixecker and others.

Prior to April 17, Morey Sachnoff had given his son Lee possession of the Toyota. Lee had parked the car in the driveway at his home in Riverwoods on the day of the accident. On the same day, Rixecker, who had been released from a hospital after a suicide attempt three days earlier and was intoxicated from the consumption of barbituates, left her house with some teenage friends to go for a car ride. She subsequently instructed the driver of the car she was riding in to drive down some streets near Bannockburn. When they came to Lee Sachnoff's driveway, Rixecker told her friend to drive the car in and stop. Even though Rixecker did not know the Sachnoffs, nor they her, she then went over to the Toyota which was parked in the driveway, found the keys in the car, and drove off. Shortly thereafter she was involved in the collision with Johnston's car, which resulted in Todd Warner's death.

The pertinent provisions of the State Farm policy considered by the trial court in granting State Farm summary judgment are as follows:

> "The liability coverage extends to the use by an *insured* of a *newly acquired car*, a *temporary substitute car* or a *non-owned car*.

\* \* \*

*Non-Owned Car*—means a *car* not:

1. owned by,
2. registered in the name of, or
3. furnished or available for the regular or frequent use of:

*you, your spouse*, or any *relatives*. The use has to be within the scope of consent of the owner or *person* in lawful possession of it." (Emphasis in original.)

    ■ On appeal, Rixecker contends that the trial court erred in applying an "objective" rather than a "subjective" test in determining that she lacked consent to drive the Sachnoff car. The difference between the two, according to Rixecker, is that in the former case consent is determined from the perspective of Sachnoff as the *owner* of the car, and in the latter case it is determined from her perspective as the *driver* of a nonowned vehicle. While she admits that she did not have express consent to drive the Sachnoff car, at the same time she argues, in applying a subjective test, that she could "possibly" have had a "reasonable belief" that she had consent to take the car since she was "incapable of understanding whether or not she had the owner's permission" due to her intoxication from consumption of barbituates and a mental disorder. Accordingly, she contends this was a question of fact for the trier of fact, thereby precluding entry of summary judgment. In support of her reasonable belief-subjective test argument, Rixecker relies on several Illinois cases and authority from another jurisdiction.

    We find that the obvious fault in Rixecker's argument is that since she admittedly knew she did not have the Sachnoffs' express consent to take the Sachnoff car and did not know the Sachnoffs, then she simply could not have reasonably believed she had some kind of implied consent, which she appears to be asserting based on the authorities she relies on. We further observe that even the authorities she relies on are inapplicable under the facts before us. (See *Western States Mutual Insurance Co. v. Verruchi* (1977), 66 Ill. 2d 527, 363 N.E.2d 826; *United States Fidelity & Guaranty Co. v. McManus* (1976), 64 Ill. 2d 239, 356 N.E.2d 78; *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, 297 N.E.2d 163.) They are inapplicable because they concern the "initial permission" rule, which provides that "where an insurer elects to include in its policy a broad provision extending liability coverage to persons operating or using a car with the permission of the owner, a further grant of permission from the initial permittee need not be shown in order to invoke the coverage," barring theft or a tortious conversion.

(*United States Fidelity & Guaranty Co. v. McManus* (1976), 64 Ill. 2d 239, 243, 356 N.E.2d 78.) Here, Lee Sachnoff, the initial permittee, simply did not expressly or impliedly give his consent or permission to Rixecker to take the car; she just took the car without Sachnoff's knowledge. At best, Rixecker may have had some metaphysical belief she had Sachnoff's consent, but we know of no authority which would support that such a belief would fall within the consent required under the subject policy provision.

■ ■ We further observe that at the very least Rixecker obtained possession of the car by means of a tortious conversion (control over the car in a manner inconsistent with the Sachnoffs' right of possession), an exception to application of the initial permission rule and, therefore, her reasonable belief argument would fail since a person's malice, culpability or conscious wrongdoing is irrelevant where a person tortiously converts another's property. See *Landfield Finance Co. v. Feinerman* (1972), 3 Ill. App. 3d 487, 279 N.E.2d 30.

We also note that the recent case of *Economy Fire & Casualty Co. v. State Farm Mutual Insurance Co.* (1987), 153 Ill. App. 3d 378, 505 N.E.2d 1334, further supports our rejection of Rixecker's reasonable belief-subjective test argument. In that case, the defendant transferred title to his car to his girlfriend, who then acquired an insurance policy on the car from Economy that contained a provision denying coverage to any person using the insured car "without a reasonable belief that the person is entitled to do so." (153 Ill. App. 3d at 383.) At a later date the defendant, while intoxicated, forcibly took the keys to the car, and subsequently was involved in an automobile collision. The court, in holding that coverage did not exist under Economy's policy, stated that the defendant did not have a reasonable belief that he was entitled to drive the car for a number of reasons, including the fact that in his intoxicated condition it was apparent that he "just forcibly took the car without even considering whether he was entitled to do so." (153 Ill. App. 3d at 383.) In the instant case, the facts similarly indicate that Rixecker, in her admitted intoxicated condition, also did not even consider whether she was entitled to take the Sachnoff car. We finally note that no provision of the subject policy conditions coverage for the use of a nonowned car on the driver's "reasonable belief" that he is entitled to drive a nonowned car, as it could have so provided; it only provides coverage for the use of a nonowned car if that use is *within the scope of the consent of the owner or person in lawful possession of the car*.

Similarly, we find Rixecker's reliance on *Carlsson v. Pennsylvania General Insurance Co.* (Pa. 1969), 214 Pa. Super. 479, 257 A.2d 861,

misplaced. Rixecker relies heavily on *Carlsson* for the previously discussed proposition that the question of a car owner's consent to another to use his car should be viewed from the perspective of the driver and measured by a subjective test. Under the facts in *Carlsson*, however, Illinois' initial permission rule would control (see *Western States Mutual Insurance Co. v. Verruchi* (1977), 66 Ill. 2d 527, 363 N.E.2d 826; *United States Fidelity & Guaranty Co. v. McManus* (1976), 64 Ill. 2d 239, 356 N.E.2d 78; *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, 297 N.E.2d 163), *i.e.*, *Carlsson* involved the situation where a father gave his son permission to use his car and the son exceeded the scope of the permission in allowing another person to drive the car. The *Carlsson* court held, as we believe Illinois would have held under the same circumstances, that notwithstanding that the permission given was exceeded, where an individual has borrowed an automobile in the reasonable belief that he has the actual consent of the owner, he is covered by his own policy. (Compare *Economy Fire & Casualty Co. v. State Farm Mutual Insurance Co.* (1987), 153 Ill. App. 3d 378, 505 N.E.2d 1334 (reasonable belief that the defendant was entitled to drive a nonowned car did not exist).) In the instant case, as stated previously, Rixecker admitted she did not have the Sachnoffs' express consent, she could not have reasonably believed she had Lee Sachnoff's implied consent, and the only belief she could have had would have been in the realm of metaphysics due to her mental condition. Moreover, in *Carlsson*, again unlike the case here, permission had been given to the initial permittee, and the issue was only whether a subsequent permittee reasonably believed he had the actual consent of the owner.

■ Rixecker further argues, relying on *Carlsson*, that the application of an objective test rather than a subjective one is against public policy because requiring " 'objective' permission would mandate a driver's extensive investigation into who actually held title to a particular nonowned vehicle *that he was borrowing*, allow coverage no greater than that provided under the owner's policy, expose the driver to unwarranted and uninsured liability above the owner's policy, and undermine the objectives of broad insurance coverage to protect the insured driver and compensate accident victims." (Emphasis added.) What Rixecker fails to recognize, however, is that Illinois' initial permission rule precludes this result in combination with insurance policies, as here, which specifically provide for coverage to an insured for driving nonowned vehicles with the consent of the owner or person lawfully entitled to possession of the vehicle.

■ Rixecker's final argument is that "mental incapacity is an insured risk, and that coverage may not be denied for acts caused by an individual who lacks the mental capacity to act rationally." In other words, Rixecker appears to be arguing that notwithstanding a specific policy provision requiring consent to drive a nonowned vehicle, that provision should be nullified because public policy requires that a mentally incapacitated person must not be denied coverage under *any* circumstances.

We first note that State Farm does not dispute that if Rixecker had been driving her own or her family's car in her mentally incapacitated condition, coverage would exist under her father's policy. We further observe that although it is well settled that a person's mental state may be relevant to criminal cases based on intent, it has no application in the tort field based on the theory that where two innocent persons must suffer a loss, it should be borne by the one who occasioned the loss. (See *Vosnos v. Perry* (1976), 43 Ill. App. 3d 834, 357 N.E.2d 614.) To hold that Rixecker's mental state rather than Sachnoff's, the owner's, mental state, controlled the question of permission or consent would be vicariously putting the loss on an innocent person, or an innocent insurance company, rather than the one who occasioned the loss. Finally, to hold that Rixecker's mental state overrides a specific policy provision would result in distorting the terms of the policy and create an ambiguity where one does not exist, which this court may not do. See *Allstate Insurance Co. v. Boston Whaler, Inc.* (1987), 157 Ill. App. 3d 785, 510 N.E.2d 1180.

For the foregoing reasons, we affirm the trial court's granting of summary judgment to State Farm. We also vacate our order staying State Farm's cross-appeal and dismiss that appeal since the issues raised therein are mooted by this opinion.

Judgment affirmed; cross-appeal dismissed.

LORENZ and COCCIA, JJ., concur.