**ESTATE OF Todd C. WARNER, etc., Plaintiff,**

**v.**

**UNITED STATES of America, et al., Defendants.**

**No. 85 C 3200.**

United States District Court, N.D. Illinois, E.D.

Dec. 20, 1990.

Larry R. Witzoff, Marcus J. Nunes, Chicago, Ill., for plaintiff.

Fred Foreman, Ann L. Wallace, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This action has been brought by Lynda Warner ("Warner") as personal representative for the estate of Todd Warner ("Todd") to seek recovery for Todd's death as a result of a collision in 1983 between a vehicle driven by Stephanie Rixecker ("Rixecker") and another vehicle in which Todd was a passenger.[1] In Count I Warner has sued the United States under the Federal Tort Claims Act ("FTCA"),[2] 28 U.S.C. §§ 1346(b) and 2671–2680, alleging that Officer Lester Caldwell ("Caldwell")—a police officer with the Great Lakes Naval Base ("Great Lakes") Police Department—was negligent in his pursuit of Rixecker's automobile at the time of the accident. Counts IV and V, the only other remaining claims,[3] are pendent state-law claims charging negligence and willful and wanton misconduct against Rixecker.

This Court's July 3, 1990 memorandum opinion and order (the "Opinion," 743 F.Supp. 551 (N.D.Ill.1990))[4] dealt in part with an issue (discussed later in this opinion) impacting substantially on the absence

---

1. This District Court has established a task force to assist in the disposition of more-than-three-year-old cases on the calendars of any of the judges in this District. As part of that task force's activity, this Court has volunteered to try cases pending on the calendars of its colleagues, and this action (pending on the calendar of Honorable Charles Norgle) has been referred for that purpose.

2. No jury trial is allowed under the FTCA, and Warner has waived any right to a jury trial on the pendent state-law claims against Rixecker.

3. On August 6, 1985 Judge Norgle granted the United States' motion to dismiss Count II, which was a separate cause of action against Caldwell. Then Count III, a negligence action against the driver of the automobile in which Todd was a passenger, was dismissed on March 30, 1988. Finally, Count I had originally also alleged that the United States had negligently allowed shrubbery to block and obstruct the vision of motorists, but Warner has waived that allegation in the final pretrial order ("FPTO").

4. Citations to the Opinion will take the form "Opinion at —" citing only the F.Supp. page number without repeating the volume number.

of any liability on the United States' part. Now the United States moves under Fed.R. Civ.P. ("Rule") 56 for summary judgment. For the reasons stated in this memorandum opinion and order, the motion is granted and the remaining state-law claims against Rixecker are dismissed.

### Facts [5]

At 3:38 p.m. Sunday April 17, 1983 [6] Rixecker, an unlicensed 15–year old driver who had recently attempted suicide, was driving a car that she had stolen that day. Rixecker piloted the stolen car into the intersection of Sheridan Road and 22d Street, North Chicago, Illinois at a speed of approximately 60 m.p.h., ignoring a stop sign and slamming into the side of a car owned and driven by Matthew Johnston ("Johnston"), causing it to flip over and land on its roof. Todd, a passenger in Johnston's car, was killed by the impact.

Just moments before that Rixecker had made an illegal U-turn, had nearly hit a guard on duty at Great Lakes, had run a red light and had driven down a half-mile stretch of road weaving and speeding up to the point of impact. At that point Caldwell was following Rixecker at a distance of approximately 300 to 400 feet. He had been following Rixecker for just under 60 seconds before the accident.

Only three days before the accident Rixecker had attempted to commit suicide by slashing her wrists and taking a quantity of pills, after which she was admitted to the intensive care unit at Glenbrook Medical Hospital for drug poisoning and multiple wrist lacerations. Then just one day after her April 16 discharge from the hospital Rixecker went for an automobile ride with some of her friends. While they were riding around Rixecker asked the driver of the car, Ingrid Schwartz ("Schwartz"), to stop at a house in Riverwoods, Illinois. There Rixecker stole a 1978 Toyota owned by Morey Sachnoff ("Sachnoff") from the driveway and drove off.

Schwartz pursued Rixecker, who then struck a parked automobile, drove over a private lawn and sped away. Schwartz continued to follow Rixecker through Deerfield, Illinois to Deerfield Road, to Milwaukee Road,[7] north to Buckley Road and then east to Sheridan Road in North Chicago. Refusing to stop the stolen car, Rixecker drove up Sheridan Road, turning into the Great Lakes Farragut Street entrance. While Rixecker waited in line to enter the gate, Schwartz (who was still behind her) told on-duty Officer Caldwell that Rixecker was a runaway, had attempted suicide, was underage and was driving without a license. Caldwell responded by turning on the red lights on his patrol car, which was marked with "Great Lakes Police Department" on each door and the sign "POLICE" on the fenders, and moved up toward the rear of Rixecker's vehicle.

Suddenly Rixecker "rapidly put her car in reverse" (Caldwell Dep. 40), made an illegal U-turn and almost hit a guard positioned at the gate. She then headed away from the base, ran a red light at Farragut and Sheridan Roads and after making a right turn quickly sped north on Sheridan Road toward the next intersection, a little more than a half mile away.[8]

---

5. Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is called on to draw all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant—in this case Warner (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir. 1987)). Although they have cited incorrectly to the subparagraphs of this District Court's General Rule ("GR") 12(m) and 12(n) requiring factual statements in support of and in opposition to Rule 56 motions, both sides have tendered such statements (cited "D. 12(m)—" and "P. 12(n)—," respectively).

6. All other dates given without year citations also refer to occurrences in 1983.

7. That at least is how the record submitted to this Court reads. Both from this Court's familiarity with the area and from its geography, it seems more likely that the reference should be to Skokie Highway.

8. Sheridan Road runs in a north and south direction, and 22d Street runs in an east and west direction. At the time of the accident each street was a two-way street.

Caldwell saw those events and consequently followed Rixecker with his emergency lights on and siren activated. He immediately notified his radio dispatcher that he was following a vehicle speeding northbound on Sheridan Road. By the time Caldwell began his pursuit of Rixecker down Sheridan Road, she was already 200 to 300 feet ahead of him. Caldwell had kept his lights and siren on in order to alert any possible traffic in the approaching intersection. There was no traffic on Sheridan Road between Farragut and 22d at the time Rixecker sped down toward the 22d Street intersection. Caldwell's intention was to terminate his pursuit if Rixecker continued through the intersection and did not stop.

When Caldwell had reached his maximum speed of 60 to 65 m.p.h.—at a point about half way from Farragut Street to 22d—Rixecker was already 300 feet ahead of him. Caldwell did not actually know that the Johnston car was about to enter the 22d Street intersection, but he continued to use his lights and siren to warn any drivers who might have been in the vicinity of the intersection. Rixecker sped north on Sheridan Road and was weaving from lane to lane, including the oncoming traffic lane. Rixecker does not recall that Caldwell was following her as she was speeding down Sheridan Road. She increased her speed and was driving at approximately 60 m.p.h. —20 m.p.h. over the speed limit—when she ran the stop sign at 22d Street and struck the Johnston vehicle, mortally injuring

Todd, who was pronounced dead at the scene at 4:15 p.m.[9]

### Liability of the United States

■ Warner's claim against the United States interchangeably—and misleadingly—uses both the terms "ordinary care" and "willful and wanton negligence." As discussed below, those two standards are relevant to two different and distinct kinds of claims. Illinois law allows a claim against a police officer under an "ordinary care" standard only when the officer had a "special duty" to the particular plaintiff. Absent such a relationship, police officers in Illinois are immune from suit for their negligence unless their behavior rises to the level of "willful and wanton conduct."

■ It is of course plain, and neither party disputes, that Illinois law provides the applicable standards of liability in this case. As Opinion at 553 and nn. 3, 4 explained: [10]

1. Under the FTCA, Illinois law provides the rules of decision as to the United States' potential liability (28 U.S.C. § 2674 ("Section 2674") says that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances....").

2. Under the Illinois Local Governmental and Governmental Employees Tort

**9.** Warner admitted all the facts set forth in D. 12(m), but she argues that some information was not known to Caldwell and that other information is irrelevant or generally inadmissible. All the facts set forth in this opinion are relevant either to Caldwell's knowledge or to the causation of the accident by Rixecker. Warner also disputes the exact distance between Farragut Road and 22d Street, but she offers nothing to rebut the distance of a "little over 1/2 a mile" offered by the United States (see P. 12(n) at 1). Warner also tenders an "Additional Statement of Facts" but fails to support those alleged facts with any source in the record. Thus both Rule 56(e) and GR 12(m) and (n) preclude any consideration of those claimed "facts" on the current motion. Warner has also submitted a report of Lt. Thomas Walton, which is essentially his evaluation of the facts of this case and his legal conclusion as to the liability and standard

of care required under law for the United States. As such it is of no use to this Court, as the Opinion has already reflected. Because the facts in this case are undisputed, all that remains is the application of law to the facts—a function that this Court can perform without aid from an independent "expert."

**10.** What follows in the text was said in the course of granting the United States' motion in limine to bar the testimony of Warner's "expert" witness on the issue whether Caldwell's actions were reasonable under the expert's interpretation of the law. In doing so, this Court held that there was no need for expert testimony on the applicable standard of care—Illinois courts have made that crystal-clear (see Opinion at 555). Plaintiff's motion to reconsider was denied on August 22, 1990.

Immunity Act, Ill.Rev.Stat. ch. 85, ¶ 2–202:

> A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.[3]

That standard of care links up with a coterminous standard of care for the employer of any such public employee, *id.* ¶ 2–109:

> A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.

And the same higher-than-mere-negligence standard is prescribed by the more specialized emergency vehicle provisions of Ill.Rev.Stat. ch. 95½, ¶ 11–205.[4]

---

[3] That statute used to refer to "willful and wanton negligence" until it was amended in 1986 by substituting "conduct" for "negligence." Thus the operative standard at the time of the occurrence at issue here was the pre-amendment version, when "willful and wanton" was expressly characterized as a greater degree of negligence.

[4] [T]o return to the emergency vehicle statute itself, its language sets out a listing of traffic laws that the drivers of emergency vehicles may disregard or violate, then follows that list with this provision (ch. 95½, ¶ 11–205(e)):

> The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

By its terms that sets a standard for the direct consequences of actual driving by the operator of the emergency vehicle ("due regard for the safety of all persons") that on its face differs from any other effects flowing from the driver's conduct ("the consequences of his reckless disregard for the safety of others").[11] Both the latter language and the state court cases applying it (as well as ch. 85, ¶ 2–202) treat "reckless disregard" as synonymous with "willful and wanton" in establishing the measure of liability of the emergency vehicle driver....

And as Opinion at 553–54 further explained,[12] the analogous employee for whose conduct the United States is potentially liable here is a municipal employee, and more specifically a police officer. In short, "the United States can be held liable in this case only if Caldwell's conduct may be labeled 'willful and wanton' " (*id.* at 554 (footnote omitted)) or if, as discussed below, there is a "special duty" toward the particular plaintiff to use ordinary care. Those two theories of liability are distinct and exclusive.[13] Each will be dealt with in turn.

### Ordinary Care

Warner proposes that Caldwell had a "duty of care for the public safety when [he was] engaged in the pursuit of suspected law violators" (P.Mem. 2).[14] Warner bases her theory on the assumption that Caldwell's "behaviors demonstrate a deviation from what a reasonable person (police officer) would have done in that situation: not initiated pursuit, conducted it properly or discontinued it long before the accident occurred" (*id.* at 5). Among the purported obligations of Caldwell under Warner's pro-

---

**11.** [Footnote by this Court] All the relevant Illinois case law establishes that the latter standard —"reckless disregard"—applies in this case (see Opinion at 555 and cases cited there; *Trepachko v. Village of Westhaven*, 184 Ill.App.3d 241, 246, 132 Ill.Dec. 602, 605–06, 540 N.E.2d 342, 345–46 (1st Dist.1989); see also *Laco v. City of Chicago*, 154 Ill.App.3d 498, 506, 107 Ill.Dec. 400, 405, 507 N.E.2d 64, 69 (1st Dist 1987), applying the "reckless disregard" and "willful and wanton" standards to facts similar to those at issue here).

**12.** Citing *Louie v. United States*, 776 F.2d 819, 825 (9th Cir.1985) and *Crider v. United States*, 885 F.2d 294, 296–97 (5th Cir.1989).

**13.** *Laco*, 154 Ill.App.3d at 509, 107 Ill.Dec. at 406–07, 507 N.E.2d at 70–71 explains that the theory of liability based on "special duty" and that based on "wilful and wanton" disregard for the safety of others are separate and distinct.

**14.** Warner further classifies that standard as one of "ordinary care," while at the same time conceding that there was no "special duty" to provide that level of care (*id.* at 2–3).

posed standard is a "duty to warn the persons at the North Gate of the dangerous conditions" (*id.*). Warner's theory of liability centers on Caldwell's obligation to the public in general, though it seems to characterize the duty as one owed to Todd specifically as a foreseeable victim of Rixecker's driving.

■ Nearly that selfsame form of analysis was recently rejected by *Trepachko*. At issue in that case was the liability of a police officer who had directed a driver to move his car across traffic lanes to a median. Both plaintiffs, the estates of two motorcyclists who had collided with the other driver during that maneuver, alleged (184 Ill.App.3d at 243, 132 Ill.Dec. at 603, 540 N.E.2d at 343): ·

> that [the officer] was negligent in the following respects: directing [the driver] to drive his car across two lanes of travel; failing to keep a proper lookout for or take measures to control oncoming traffic; and focusing his spotlight in [the driver's] rear view mirror in such a way as to make it difficult or impossible for [the driver] to see any traffic approaching from the south.[15]

Finding that there was no duty to provide protection for the third parties who were killed, the court stated (*id.* at 244, 132 Ill.Dec. at 604, 540 N.E.2d at 344 (citations omitted)):

> It is well established in Illinois that, generally, municipalities are not liable for the failure to provide police protection.

That rule applies in all cases except one: when the police officer has a "special duty" towards the plaintiff. But *Trepachko, id.* at 245, 132 Ill.Dec. at 604, 540 N.E.2d at 344 (emphasis added, citations omitted)

went on to hold that the narrow "special duty" exception exists:

> only where four criteria are met: (1) the police are uniquely aware of the particular danger or risk to which plaintiff is exposed, (2) there are allegations of specific acts or omissions on the part of the police, (3) those acts or omissions are either affirmative or wilful in nature and (4) the injury occurs while the *plaintiff is under the direct and immediate control* of the police.

As was true of the plaintiffs' decedents in *Trepachko*, Todd's existence was unknown to the police officer involved in this case. Thus Todd was not "under the direct and immediate control of the police." And therefore Caldwell had no "special duty" to provide protection for Todd under an ordinary care standard.

■ Warner concedes that Caldwell had no "special duty" toward Todd but insists that an "ordinary care" standard still applies to Caldwell's duty toward any potential victim of Rixecker's reckless attempt to escape Caldwell's pursuit (P.Mem. 2–3). *Trepachko* rejected that argument (see 184 Ill.App.3d at 247–48, 132 Ill.Dec. at 606, 540 N.E.2d at 346), and this Court does likewise.[16] As *Trepachko, id.* at 249, 132 Ill.Dec. at 607, 540 N.E.2d at 347), citing *Fitzpatrick v. City of Chicago*, 112 Ill.2d 211, 97 Ill.Dec. 419, 492 N.E.2d 1292 (1986) (other citations omitted) stated:

> [S]ection 2–202 applies to officers engaged in the execution and enforcement of traffic laws and, together with section 2–109 shields both the officer and the municipality from liability for injuries resulting from acts of ordinary negligence. Thus, in order to recover for injuries which occur during the execution or en-

---

**15.** [Footnote by this Court] *Trepachko, id.* says that one of the plaintiffs also alleged that the "failure to warn oncoming cars of the maneuver [the driver] was performing at [the officer's] direction, constituted both negligent and wilful and wanton conduct."

**16.** Like Warner, the plaintiffs in *Trepachko, id.* 184 Ill.App.3d at 245, 132 Ill.Dec. at 604, 540 N.E.2d at 344 argued that the police breached a supposed general duty of ordinary care and that the situation did not specifically pose a "special duty" or "police protection case." *Trepachko,*

*id.* at 248, 132 Ill.Dec. at 606, 540 N.E. at 346 also teaches that the police's level of control over the driver of the car that impacted the plaintiff is not related to the "direct and immediate" control required under a "special duty" analysis:

> Whether or not [the driver who caused the accident] was under the direct and immediate control of [the police officer] ... is not relevant to a discussion of the special duty exception.

forcement of a law by a public employee, plaintiffs must allege facts amounting to wilful and wanton negligence.

In short, unless Warner could have shown that there was a "special duty" for Caldwell to protect the occupants of the car that was hit by Rixecker, there is no liability under an ordinary care standard for Caldwell—and consequently for the United States. Warner has shown no circumstances that could imply such a duty here.

### Willful and Wanton

■ It is true that a "special duty" is not a prerequisite for Caldwell to be potentially liable for Todd's death (see *Arnold v. Village of Chicago Ridge*, 181 Ill.App.3d 778, 784, 130 Ill.Dec. 494, 497, 537 N.E.2d 823, 826 (1st Dist.1989)). Surely Caldwell has a *general* duty to the public.

But Warner wrongly asserts that such duty is one of *ordinary* care. To find Caldwell liable, Warner must rather show that Caldwell had a "reckless" or "wilful and wanton disregard for the safety of others." *Breck v. Cortez*, 141 Ill.App.3d 351, 359, 95 Ill.Dec. 615, 620, 490 N.E.2d 88, 93 (2d Dist.1986) (emphasis added) has held:

> We agree with plaintiffs that police officers owe the general public a duty to refrain from *wilful and wanton* misconduct in the pursuit of suspected law violators.

Affirming the trial court's finding of summary judgment for the defendant, *Breck, id.* at 360–61, 95 Ill.Dec. at 621, 490 N.E.2d at 94 (citations omitted) set forth the standards for finding "wilful and wanton" conduct:[17]

> In order for a defendant's acts or omissions to be characterized as wilful or wanton, they must have been committed with actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others. In evaluating the conduct of the police officers here, we must be mindful

of the reason for their pursuit of [the driver]. The evidence in the instant case, even when viewed in its aspect most favorable to plaintiffs, establishes that [the driver] was driving his car in a reckless manner and endangering the public before the police began to chase him.... Under these circumstances, a failure on the part of the police to act would have presented a substantial threat to public safety. Moreover, although all high speed pursuits of suspected law violators involve risk to other motorists and pedestrians on the road, the circumstances here did not make the pursuit exceptionally hazardous.... Considering the danger to the public created by [the driver's] presence on the roads and the nature of the pursuit involved here, we conclude that the police officers did not act with utter indifference to or conscious disregard for the safety of others.

■ There is simply no evidence that shows Caldwell to have been willfully and wantonly negligent. Nothing in Caldwell's actions displays a "conscious disregard for the safety of others." Indeed, had he not turned on his lights, or had he not first begun to pursue Rixecker, all the while using his siren to warn other possible motorists, his failure to protect the public from a driver who had already displayed reckless behavior "would have presented a substantial threat to public safety" (*id.*) But Caldwell did act, and at no time did *his* driving affect the safety of others. In fact, no other drivers were on that stretch of Sheridan Road on that Sunday afternoon. Nor is there room for any reasonable inference that Caldwell's failing to stop his pursuit any earlier—that is, sometime within the approximately 60 second interval between the beginning of Rixecker's race down Sheridan and the accident— was a "willful and wanton" disregard for the safety of others, or even that it would have changed the outcome of Rixecker's

---

17. *Breck, id.* 141 Ill.App.3d at 359, 95 Ill.Dec. at 620, 490 N.E.2d at 93 (citation omitted) explains:

> The elements of a cause of action for wilful and wanton negligence are a duty to the injured party, and a breach of that duty which is a proximate cause of the injury.

actions.[18]

Nor can it be said that Caldwell was "willful and wanton" because, during that less than 60–second period, he did not somehow ensure that any potential but unknown traffic be stopped at the 22d Street intersection. Nor can his failure to cut off Rixecker's escape from the gate area be characterized in that fashion. All such supposed delinquencies on Caldwell's part do not even approach ordinary negligence, much less "willful and wanton" conduct. While Warner may contend that any one of those omissions or acts could have had an effect on the outcome that was caused by *Rixecker*, Warner cannot impose liability on *Caldwell* where there was no willful and wanton negligence on his part.

In another police pursuit case involving facts comparable to those at issue here, *Laco* affirmed a summary judgment for the defendant municipality. Like Caldwell, the officers in *Laco* initially knew only that the driver had committed a minor traffic offense, but that (154 Ill.App.3d at 505, 107 Ill.Dec. at 404, 507 N.E.2d at 68):

> once [he] sped away from the gas station, his "minor" traffic violations rose to the level of an even more serious danger to the other drivers on the roadway.

And *Laco, id.* found that the officers' response was clearly not "wilful and wanton" where:

> although the car chase occurred in a residential area, traffic was light and defendants, in fact, did not encounter other drivers during the chase, the streets were dry and artificially illuminated, and the evening was clear.

Like Warner, the plaintiff in *Laco* asserted that the police officers should have known of certain risks to others that should have caused them to discontinue the pursuit. But the court, *id.* at 506, 107 Ill.Dec. at 405, 507 N.E.2d at 69 (citation omitted) stated:

We also find no merit in plaintiffs' further assertion that defendants here should have known that their pursuit of [the law violator] might result in an automobile accident and that they therefore should have discontinued their pursuit of him. To so hold would result in a situation where an operator of an automobile who is speeding, or who is a reckless driver on the highway, would know that all he had to do was to go faster and there would be no chase.

However tragic the result of Rixecker's reckless driving were, Caldwell's actions (like those of the officers in *Laco*) were not willful and wanton. As *Stanton v. State*, 26 N.Y.2d 990, 311 N.Y.S.2d 28, 29, 259 N.E.2d 494, 495 (1970)[19] put it:

> While it is most unfortunate that bystanders are sometimes innocently involved and injured by the police in the performance of their duties, such emotional and understandable human considerations are not a substitute for proof of negligence.

And because Warner has shown no facts that could lead a reasonable person to believe that Caldwell's actions exhibited an "actual or deliberate intention to harm or ... an utter indifference to or conscious disregard for the safety of others" (*Breck*, 141 Ill.App.3d at 360, 95 Ill.Dec. at 621, 490 N.E.2d at 94 (citation omitted)), the United States' motion for summary judgment must be granted on this ground alone.

### Proximate Cause

■ What has gone before suffices to foreclose Warner's claim against the United States. But there is another and independent set of factors that mandates the identical result. Even if Caldwell had breached some legal duty to Todd, Warner would fail on causation grounds.

---

**18.** Rixecker testified that she did not even recall that Caldwell was behind her as she sped down the street (Rixecker Dep. 75–76). Thus nothing suggests that Caldwell's pursuit from a distance of 300 to 400 feet had any effect on her reckless behavior (see the *Proximate Cause* section of this opinion).

**19.** Quoted in *Breck,* 141 Ill.App.3d at 361, 95 Ill.Dec. at 622, 490 N.E.2d at 95 and cited in *Laco,* 154 Ill.App.3d at 506, 107 Ill.Dec. at 405, 507 N.E.2d at 69.

First of all, on the uncontroverted evidence Caldwell's actions did not cause Rixecker to respond in the reckless manner that she did. In straight cause-and-effect terms plaintiff thus strikes out on the third essential component of every negligence claim (duty, breach of duty, and damages *caused* by that breach).

There is more, and that something more is independently fatal to plaintiff's claim. Even were she able to provide the necessary causal nexus in simple "but-for" terms (as she has not), it does not follow that Caldwell's actions or omissions were the *proximate* cause of the accident between Rixecker and Johnston in the legal sense (see *Armstrong v. Mudd,* 655 F.Supp. 853, 859 (C.D.Ill.1987)). *Armstrong, id.* states, quoting from *Bailey v. L.W. Edison Charitable Foundation,* 152 Ind.App. 460, 468, 284 N.E.2d 141, 146 (3d Dist.1972):

> "Police cannot be made insurers of the conduct of the culprits they chase." The policy of safeguarding life and property by apprehending a fleeing suspect who, by electing to run, recklessly endangers innocent parties must be balanced against the possibility of injury upon commencing the pursuit. In other words, an officer's duty to drive with due care must be gauged in relation to the surrounding circumstances.

*Armstrong, id.* at 860 (citation omitted) found:

> Clearly, the direct and proximate cause of [plaintiff's decedent's] death was the utter disregard by [the law violator] of authority in running from the police and his lack of due care in recklessly operating his vehicle. "The officers would have been derelict in their duty had they not pursued the escapee in the reasonable manner in which they did pursue him."

Here too it was just as clearly not Caldwell's action that caused the accident. Instead the situation is described with total accuracy by *Huddleston v. City of Charleston,* 144 Ill.App.3d 1077, 1080, 99 Ill.Dec. 17, 19, 495 N.E.2d 82, 84 (4th Dist. 1986) (as paraphrased to fit this case):

> [Rixecker's] reckless disregard for [her] own safety, ... the safety of other drivers, [her] disregard for the various licensing rules, and [her] engaging in a high speed police chase, evidences such negligence that it is clear that [her] actions were the original wrong.

And as *Huddleston, id.* stresses, the first (and proximate) cause in a pursuit case is not the police officer but rather the escaping law violator. Rixecker was the sole wrongdoer in this case, and nothing that Caldwell did broke that chain of causation.[20] Nothing that he did or failed to do made Rixecker drive her car at 60 m.p.h. into Johnston's vehicle.

\*     \*     \*

In sum, no reasonable person could find that Caldwell's actions here displayed a willful and wanton disregard for safety of others. Nor does the evidence give rise to any reasonable inference that Caldwell's actions or omissions were the proximate cause of Rixecker's driving the stolen car into Johnston's vehicle. Accordingly the United States' motion for summary judgment on Count I must be granted and the action against it dismissed in its entirety.

### Pendent State Claims

With Warner's FTCA claim having succumbed to this summary judgment motion, *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) teaches that the proper course is to dismiss—without prejudice, of course—both Counts IV and V despite the age of

---

20. *Huddleston* involved a police chase and a roadblock. There the court determined that the roadblock was not the proximate cause of the death of the driver's passenger, when the driver lost control of the vehicle as he came upon the roadblock. *Huddleston,* 144 Ill.App.3d at 1080, 99 Ill.Dec. at 19, 495 N.E.2d at 84 held that such an action by the police was foreseeable, and that as such it was not an intervening cause and thus did not break the "causal connection" begun by the first action by the wrongdoer (see also *Armstrong,* 655 F.Supp. at 860). That is also the case here. Rixecker began her reckless driving before Officer Caldwell took any action, and his following her once she made an illegal U-turn, nearly hit a gate-guard and ran a red light was a foreseeable consequence and as such did not become an intervening cause.

this case. *Gibbs, id.* at 726–27, 86 S.Ct. at 1139 (citations and footnote omitted) explains the rationale behind such a ruling:

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

In this instance Rixecker is not represented by counsel, and she did not join in the FPTO (which only Warner and the United States cosigned). Thus all the facts set out in this opinion are not established against her, and a trial of Warner's claims against her would have to start from scratch.[21] Under the circumstances, *Gibbs* strongly suggests that with no federal claim surviving to serve as the source of their attachment, the remaining Counts should be dismissed without prejudice.

### Conclusion

Because there are no genuine issues of material fact as to the liability of the United States under the FTCA, it is entitled to a judgment as a matter of law on Count I. In light of that disposition, the remaining Counts IV and V—asserted against Rixecker alone—are dismissed without prejudice. This action is therefore dismissed in its entirety.

---

**21.** It is also worth noting that *State Farm Fire & Casualty Co. v. Rixecker,* 184 Ill.App.3d 506, 132 Ill.Dec. 696, 540 N.E.2d 436 (1st Dist.1989) has recently affirmed a summary judgment that denied insurance coverage for this accident. It may well be (though this Court does not of course decide) that any claim against Rixecker individually may be an effort to tap an empty barrel and is therefore not worth pursuing.