**EASTERN NATURAL GAS CORPORA-TION and Dest Exploration Incorporated, Plaintiffs–Appellants,**

v.

**ALUMINUM COMPANY OF AMERICA, Defendant–Appellee.**

No. 96–4117.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1997.

Decided Oct. 3, 1997.

Rehearing Denied Dec. 1, 1997.

J. Burley Scales, Scales, Wissner & Krantz, Boonville, IN, D. Duane Cook (argued), Clifton Farm, Stamping Ground, KY, for Plaintiff–Appellant.

Thomas G. Rohback (argued), Lynn A. Ellenberger, Lebouf, Lamb, Greene & Macrae, Pittsburgh, PA, Benjamin C. Cubbage, Jr., Henderson, KY, for Defendant–Appellee.

Before COFFEY, EASTERBROOK and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Eastern Natural Gas Corp. ("ENG") and Dest Exploration, Inc. ("Dest") discovered that going on the offensive is not always the best strategy. When they sued Aluminum Company of America ("ALCOA") for breach of contract, ALCOA countersued for fraud. Dest and ENG lost on both claims before a jury and now appeal. We affirm.

## I.

ALCOA owned the rights to drill for oil and gas on approximately 40,000 acres of property in Indiana owned by Peabody Development Company. Commensurate with these rights, ALCOA acquired certain obligations to drill on and develop the land. In 1988, ALCOA sublet its rights in the land to

ENG in an agreement that required ENG to spend a certain amount of money on the property, and which also required ENG to meet certain drilling obligations. ENG and ALCOA also entered into a gas purchase agreement (the "GPA") which obliged ALCOA to buy from ENG the gas produced from the Peabody land. The Sublease and the GPA were later assigned to Dest with ALCOA's consent. In 1991, after the GPA expired by its own terms, Dest and ALCOA signed a "Letter Agreement" which Dest claimed required ALCOA to enter into a new gas purchase agreement at higher prices.

Dest did not keep up with its contractual obligations and ALCOA began sending notices of default to Dest and ENG in 1993. ALCOA complained that Dest was not drilling the number of wells it was required to drill under the Sublease. Dest countered that it was relieved of its drilling obligations in 1993, and that ALCOA's actions made it impossible for Dest to drill in 1993. Dest also charged ALCOA with anticipatory repudiation of the GPA. Although ALCOA was not aware of it at the time, Dest was also defaulting on its spending obligation. Larry Corwin, the president of Dest, tried to cover up Dest's failure to meet spending requirements by creating a false invoice in the amount of $81,400, from Geodata Corp., a supplier of geophysical information. Corwin also falsified other documentation to back up the forged invoice so that ALCOA would not discover his deception, and so that ALCOA would believe that Dest and ENG were meeting their spending obligation.

In 1994, Dest sued ALCOA for breach of the Sublease and breach of the Letter Agreement. ALCOA counterclaimed, charging Dest and ENG with negligence in drilling a particular well on the Peabody land, with breaching the Sublease by failing to drill the number of wells required, and with breach of the Letter Agreement. Both sides eventually moved for partial summary judgment. The district court rejected as a matter of law ENG's argument that ALCOA could not declare ENG in default of the Sublease unless and until Peabody declared ALCOA in

breach of the primary lease. The court found that although no one disputed that ENG failed to meet the minimum drilling requirements, questions of fact remained about whether ALCOA had prevented ENG from performing the drilling terms of the Sublease. Thus, the court held that issues of fact precluded summary judgment on the issue of which party breached the Sublease.

The district court also found that the Letter Agreement was not a valid contract because it was too indefinite in its terms to be enforceable.[1] At most, the court found, the Letter Agreement was a promise to negotiate in order to come to specific terms for a new gas purchase agreement at some later date. Thus, the district court granted summary judgment in favor of ALCOA on Dest and ENG's claim for breach of the Letter Agreement.

Several months before trial on the remaining issues, ALCOA, in the course of conducting third party discovery, uncovered a discrepancy between invoices produced by third party Geodata and invoices produced by ENG and Dest related to Geodata. ALCOA promptly moved to reopen discovery, and the trial court allowed ALCOA to depose Larry Corwin, the president of ENG. As a result of this deposition, ALCOA determined that Corwin had forged an $81,400 invoice from Geodata in order to make it appear to ALCOA that ENG was meeting its spending obligation under the Sublease. Corwin had also created a check, purportedly to Geodata, which was actually deposited in a Dest account. In addition to this deception, Corwin created "vendor analysis forms" which showed dummy payments to two other vendors, all in furtherance of the scheme to make it appear that ENG was meeting its spending obligation. All of this false documentation was presented to ALCOA with the intention that ALCOA rely on the information. And ALCOA did, in fact, rely on the false documentation in deciding to continue its relationship with Dest and ENG. One ALCOA witness, accountant Jerry Van Wert, testified that he "seriously doubt[ed]" wheth-

---

1. After uncovering evidence of fraud committed by Dest's president, ALCOA sought leave to amend its counterclaim so that it could withdraw the contract counterclaim based on the Letter

Agreement, and add a claim based on the fraud. As we discuss *infra*, the district court did not abuse its discretion in allowing ALCOA to make these amendments.

er ALCOA would have continued its relationship with ENG if it had known that ENG was forging documents. ALCOA's in-house counsel, John Holsinger, testified that ALCOA would have "absolutely" terminated its relationship with Dest if it had known that Corwin was lying and forging documents in order to show that it was meeting the spending requirement. Finally, ALCOA employee John Hemphill testified that ALCOA was damaged by relying on the false documents because it continued to work with ENG for a long period of time, expending resources it would not have otherwise spent.

Immediately after the Corwin deposition and approximately three months before trial, ALCOA moved to amend its complaint to add a counterclaim for fraud. Eleven days before trial was to begin, the court allowed the amendment. The jury found for ALCOA on both of ENG and Dest's claims and on ALCOA's counterclaims, rendering a verdict for ALCOA in the amount of $450,000. Because the evidence did not support a verdict in that amount, and because ALCOA was willing to accept a remittitur, the court amended the amount of the judgment to $397,339. Dest and ENG moved for judgment as a matter of law and for a new trial on the breach of contract claim and on the fraud counterclaim, and the trial court denied the motions.

## II.

Dest and ENG now appeal from the jury verdict and from the district court's earlier summary judgment ruling, citing a number of alleged errors. They argue that ALCOA did not prove its fraud claim because it did not prove reliance on the false documentation. Furthermore, they argue, the trial court should not have granted ALCOA leave to amend its complaint to add the fraud counterclaim only eleven days before trial because this prejudiced Dest and ENG. On the breach of contract claim, Dest and ENG claim entitlement to a new trial because ALCOA allegedly withheld material evidence and because the trial court refused to allow Dest and ENG to use certain ALCOA pleadings to impeach ALCOA witnesses. Dest and ENG also argue that the district court erred when it ruled on summary judgment that the Letter Agreement was not an enforceable contract and when it ruled that

ALCOA could declare default on the Sublease before Peabody declared default on the primary lease. Finally, they claim prejudice to their contract claims from the court's allowance of the fraud claims "on the eve of trial." As we shall see, none of these arguments has any merit.

## A.

■■■ Because much of the plaintiffs' argument is premised on the district court's allowance of ALCOA's motion to amend the complaint to add the fraud counterclaim, we will address that issue first. We review the district court's grant of a motion to amend for abuse of discretion. *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773 (7th Cir.1995). Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires." Thus, we have held that in the absence of undue delay, undue prejudice to the party opposing the motion, or futility of the amendment, leave should be freely given. *Sanders*, 56 F.3d at 773. Plaintiffs claim they were prejudiced by the late addition of ALCOA's fraud counterclaim to the case because they had insufficient time to answer the counterclaim, prepare for trial on the existing claims and the fraud claim, and engage in any meaningful discovery on the fraud claim. Not surprisingly, plaintiffs focus on the fact that the district court granted leave to amend eleven days before trial began. ALCOA, of course, emphasizes the fact that it moved to add the claim more than two months before the trial date, immediately after uncovering the fraud through third party discovery. ALCOA also points out that plaintiffs were on notice of the possible addition of a fraud counterclaim as soon as ALCOA moved to reopen discovery, approximately three months before trial. Because of this, ALCOA asserts, Dest and ENG had two months to conduct additional discovery and prepare for trial on the original claims as well as the fraud counterclaim. ALCOA also argues that Dest and ENG had the additional benefit of having within their control much of the information regarding the alleged fraud.

The district court carefully considered the potential for prejudice to Dest and ENG. In

order to minimize any prejudice, the court allowed plaintiffs to take necessary discovery regarding the fraud claim, and indeed, plaintiffs deposed ALCOA's accountant regarding ALCOA's reliance on the fraud. Dest and ENG belatedly list other discovery they would have taken had they had more time. We have no doubt that plaintiffs wish in hindsight that they had allocated their pre-trial resources in a different manner. Although plaintiffs would have us believe that they had a mere eleven days to prepare for the counterclaim, they in fact were on notice of the counterclaim months before trial. Furthermore, as far as we can tell from the record, plaintiffs did not request a continuance of the trial date in order to facilitate this additional discovery. Dest and ENG have offered no reason for us to believe the district court abused its discretion in allowing the amendment. We will not second-guess the considered judgment of the district court.

### B.

■ ENG and Dest contend that even if the trial court properly allowed the fraud claim, ALCOA failed to prove the claim because it presented no evidence that ALCOA relied on the fraudulent documents to its detriment. Plaintiffs argue that they are entitled to judgment as a matter of law on this claim, but we need not consider the merits of this issue because plaintiffs have waived this claim. As plaintiffs admitted at oral argument, they failed to file a Rule 50 motion for judgment as a matter of law at the close of all the evidence at trial. Instead, they moved for judgment as a matter of law at the close of ALCOA's evidence, but before they presented rebuttal evidence. Dest and ENG conceded at oral argument that our ruling in *Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209 (7th Cir.1995), is determinative here. In *Umpleby*, we ruled unequivocally that in order to preserve a motion for judgment as a matter of law which was not granted by the trial court, the motion must be renewed at the close of all the evidence. 69 F.3d at 212. Dest and Eng admittedly failed to preserve their Rule 50 argument.

### C.

■ Dest and ENG also claim they are entitled to a new trial on their contract claim

because ALCOA withheld material evidence, and because the trial court refused to allow Dest and ENG to use certain pleadings to impeach ALCOA witnesses. We review for abuse of discretion a trial court's refusal to grant a new trial. *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1407 (7th Cir. 1991). We grant a new trial only when the verdict is against the clear weight of the evidence, and will not set aside a jury verdict if a reasonable basis exists in the record to support the verdict. *Id.* Dest and ENG face an uphill battle here.

■ Plaintiffs claim that ALCOA withheld documents to which they were entitled once ALCOA decided to put its in-house counsel on the stand. ALCOA had withheld as attorney-client privileged the files of Mark Holsinger, its in-house counsel. ALCOA listed Holsinger as a potential trial witness weeks before trial began, and Dest and ENG made no effort to compel production at that time of the previously withheld documents. At trial, Holsinger was called to testify about, among other things, ALCOA's reliance on the fraudulent Geodata invoice and supporting documentation. After Holsinger testified for a day, Dest and ENG called for the production of privileged documents, and in particular for "Mr. Holsinger's notes and his memos to the Alcoa people and the Alcoa's people [sic] memos to him." *See* Transcript of Jury Trial, Volume 5, at p. 813. This request was made on a Friday afternoon, and on Sunday night, certain documents from Holsinger's files were produced to the plaintiffs. On Monday morning, plaintiffs complained to the court that although ALCOA had produced correspondence *from* Holsinger, they had not produced correspondence *to* Holsinger. With Holsinger about to retake the stand, counsel for ENG and Dest commented to the court that the problem of the missing documents was "not something that we need to deal with on this witness." *See* Transcript of Jury Trial, Volume 6, at p. 828. Dest and ENG did not raise the issue of the missing documents again before the trial court.

On appeal, they claim that "[a]fter the trial, and not earlier" they learned that AL-COA had not produced all of the privileged documents to which they believed they were

entitled. Because of this withholding, Dest and ENG claim they are entitled to a new trial. But again, Dest and ENG have waived this claim. By their own admissions, they knew during trial that ALCOA had not produced all of the documents in question, but they failed to object, or move to preclude testimony or to compel production, or even request a continuance so that they could determine what to do about any missing documents. They admitted in their brief to this Court that they were "dimly aware" that the requested production was not complete, but they did nothing at trial to remedy that situation. They were aware enough to raise the issue with the district court that Monday morning, but then informed the district court that the issue need not be addressed during Holsinger's testimony. It was up to Dest and ENG to raise the issue anew before they were prejudiced by the failure to produce, and certainly before the end of trial. We will not address the issue of prejudice from the missing documents for the first time on appeal.

 Nor are we persuaded that Dest and ENG are entitled to a new trial because the district court refused to allow them to use certain superseded pleadings to impeach ALCOA witnesses. We review for abuse of discretion any evidentiary rulings of the district court. *Whalen v. Rubin*, 91 F.3d 1041, 1046 (7th Cir.1996). The district courts have broad discretion to make rulings under Federal Rule of Evidence 403, and we are reluctant to second-guess them. *Id.* After discovering the potential fraud claim, ALCOA moved to amend its complaint and other pleadings to withdraw some claims and add another. The amendment at issue here is ALCOA's withdrawal of its breach of contract claim, based on the Letter Agreement. When Dest and ENG attempted at trial to introduce ALCOA's prior pleadings, ALCOA moved under Rule 403 to exclude the prior pleadings as unnecessarily confusing in an already complex case. The district court agreed that the case was complex and that certain parts of the prior pleadings would likely confuse the jury. But the district court was also concerned about fairness to Dest and ENG, because they may have been relying on these pleadings in shaping their case. The district court resolved this conflict by ruling that documents involving withdrawn legal theories (as opposed to withdrawn factual theories) were not admissible, but that Dest and ENG could question any ALCOA witnesses concerning any statement, whether factual or legal, made in the prior pleadings. Thus, although the pleadings were not admitted as evidence; Dest and ENG were allowed to use the prior pleadings to impeach witnesses or to refresh recollection, minimizing any prejudice.

Dest and ENG rely on *Contractor Utility Sales Co. v. Certain–teed Products Corp.*, 638 F.2d 1061 (7th Cir.1981), and *Buscaglia v. United States*, 25 F.3d 530 (7th Cir.1994), to support their contention that the district court abused its discretion in refusing to admit the prior pleadings as evidence. Neither supports plaintiffs' position, however. In *Certain–teed Products*, the district court concluded that prior pleadings are not admissions, and thus were inadmissible. We held that although "prior pleadings cease to be conclusive judicial admissions, they are admissible in a civil action as evidentiary admissions." 638 F.2d at 1084. The party opposing admission of the prior pleading had not raised a Rule 403 argument, and thus neither the district court nor this Court addressed whether the probative value of the pleadings in that case outweighed the risk of confusing jury, the central issue in the instant case. In *Buscaglia*, the district court ruled inadmissible an expert report that plaintiff sought to introduce into evidence. We held that the district court erred in ruling that the report failed to meet the standards for admissibility under Rule 702, which governs admissibility of expert testimony. The district court further erred by considering factors that went to the weight of the evidence rather than its admissibility in deciding that the report should also be excluded under Rule 403. Finally, in balancing the Rule 403 factors, the district court failed to account for the fact that the case was tried to the court, and not to a jury.

In stark contrast, the district court here was clearly aware that prior pleadings were generally admissible. But in this complex jury trial, the court decided on balance that the pleadings posed a serious risk of confus-

ing the jury, and that this risk outweighed the probative value of the pleadings. In order to minimize prejudice to Dest and ENG, the district court allowed plaintiffs to use the pleadings to cross-examine witnesses and refresh their recollections. When we review for abuse of discretion, we do not second-guess the considered judgment of the district court. Dest and ENG offer us no reason to believe the district court abused its discretion; rather they appear to be asking us to reweigh the Rule 403 factors in an effort to convince us that these documents were more important to their case than the district court realized, and that the district court overstated the risk of jury confusion. But we do not engage in this kind of re-weighing when we review for abuse of discretion. *See United States v. Prevatte*, 16 F.3d 767, 774 (7th Cir.1994) (in determining if the district court has abused its discretion in making an evidentiary ruling, we shall not second-guess a decision that is in conformity with established legal principles; rather we inquire whether the decision made by the trial court is within the range of options from which one would expect a reasonable trial judge to select). Therefore, we find that the district court did not abuse its discretion here. Accordingly, Dest and ENG are not entitled to a new trial on the contract claim.

### D.

■ Dest and ENG challenge the district court's grant of summary judgment, finding that the Letter Agreement was not an enforceable contract. They also contest the district court's denial of summary judgment on the issue of whether ALCOA could declare a default against the plaintiffs before Peabody declared a default against ALCOA. We can easily dispense with the second claim because the district court's refusal to grant summary judgment, followed by a full trial on the merits, is not reviewable by this Court. *See Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 277 (7th Cir.1994). In denying a motion for summary judgment, the district court decides only that the case should go to trial. *Id.* Once the case has gone to trial, denial of summary judgment becomes moot, with one limited exception: in the rare case where the plaintiff notifies the court that it intends to abandon certain claims at trial if

summary judgment is denied, we will review the denial of summary judgment. *Id.*, 29 F.3d at 278. This case does not come under the exception and we decline to review the district court's denial of summary judgment.

■ On the issue of whether the letter agreement constituted an enforceable contract, we review the district court's grant of summary judgment *de novo*. *Pasqua v. Metropolitan Life Ins. Co.*, 101 F.3d 514, 516 (7th Cir.1996). We draw all reasonable inferences in the light most favorable to the non-moving party. *Id.* Keeping those standards in mind, the two-page letter signed by Dest and ALCOA represents, at best, an agreement to agree, and under Indiana law such a document does not constitute a binding contract. *See Equimart Ltd., Inc. v. Epperly*, 545 N.E.2d 595, 598 (Ind.App. 1st Dist.1989). A letter that does not contain definite and specific terms, and that is contingent upon further negotiations and execution of a final agreement, is not a contract under Indiana law. *Id.* The two-page letter agreement here describes a drilling "obligation" and an intent to renegotiate a gas purchase agreement. The drilling obligation is "contingent upon the negotiation and execution of an Amended Gas Purchase Agreement." The letter recites various terms that the amended gas purchase agreement is to address, but contains no resolution or specification for these terms. We agree with the district court's conclusion that the letter agreement is much like the letter of intent in *Equimart*. The district court properly granted summary judgment on this claim.

### E.

Finally, Dest and ENG claim they are entitled to a new trial on the contract claim because they were prejudiced in litigating the contract claim in light of the late addition of ALCOA's fraud counterclaim to the case. We have already decided that the district court did not abuse its discretion in allowing ALCOA to amend its counterclaim to add the fraud count. Furthermore, Dest and ENG failed to preserve any objection to the effect of the fraud claim on the contract claim,

because they failed to ask for a continuance of the trial date.

AFFIRMED.