Curt A. **MCCLOUGHAN**, Plaintiff,

v.

The **CITY OF SPRINGFIELD**, a municipal corporation, and Daniel S. Patterson, Defendants.

No. 99–3104.

United States District Court, C.D. Illinois, Springfield Division.

May 24, 2002.

Richard L. Steagall, Commerce Bank Bldg., Peoria, IL, Andrew J. Kleczek, Peoria, IL, for plaintiff.

James A. Lang, Office of Corporation Counsel, Springfield, IL, William G. Workman, Theodore R. Schullian, Asst. Corporation Counsel, Springfield, IL, D. Peter Wise, Frederick J. Schlosser, Gates, Wise & Schlosser, P.C., Springfield, IL, for defendants.

## *OPINION*

RICHARD MILLS, District Judge.

Curt McCloughan backed his vehicle into the personal vehicle of an off-duty Springfield police officer.

Thereafter, according to McCloughan, he was pulled from his vehicle, restrained on the ground, and then, Springfield Police Officer Daniel Patterson twice kicked him in the head causing injuries.

After the voluntary and involuntary dismissal of some of his claims, we are ready to

proceed to trial on McCloughan's claims against Patterson for excessive use of force pursuant to 42 U.S.C. § 1983 and for state law battery and against the City of Springfield under a theory of *respondeat superior.*

However, the Court first needs to resolve the six motions *in limine* which Patterson has filed and which the Court will address *seriatim.*

### FIRST MOTION IN LIMINE

Patterson asks the Court to prohibit McCloughan from calling W. Ken Katsaris as an expert witness at trial because he does not meet the qualifications necessary to offer expert testimony in this case pursuant to Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Specifically, Patterson argues that Katsaris' testimony is not based upon scientific, technical, or other specialized knowledge; rather, it is based upon the hearsay statements of occurrence witnesses. Patterson contends that Katsaris offers nothing more than his opinion on the credibility of these witnesses—a task which the jury is quite capable of completing without his input. Finally, Patterson asserts that Katsaris should not be allowed to offer opinions which he disclosed for the first time at his deposition because McCloughan did not disclose these opinions in his report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and because he is unqualified to render these opinions. Accordingly, Patterson asks the Court to preclude McCloughan from offering Katsaris as an expert witness at trial.

McCloughan argues that Katsaris is qualified to render expert opinion testimony in this case and that the Court should allow him to offer his opinion regarding the appropriate standard of conduct of off-duty police officers and the use of force. McCloughan asserts that expert testimony on accepted police practices is admissible in § 1983 excess force cases and in any other case in which the reasonableness of police conduct is at issue. McCloughan contends that Katsaris will offer testimony on the reasonableness of Patter-son's conduct under the accepted standard of care for police officers and that Katsaris is not, contrary to Patterson's assertions otherwise, offering any opinion(s) on the credibility of the witnesses. Accordingly, McCloughan asks the Court to deny Patterson's first motion *in limine* and to allow Katsaris to offer expert opinion testimony at trial.

Federal Rule of Evidence 702 requires a district court to act as a gate-keeper in screening the admissibility of expert testimony. *Kumho Tire,* 526 U.S. at 147, 119 S.Ct. 1167. In *Daubert,* the United States Supreme Court "clarifie[d] that an expert may testify after the trial judge determines that 'the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" *United States v. Gardner,* 211 F.3d 1049, 1054 (7th Cir.2000). "Under *Daubert,* the first inquiry that must be undertaken is whether [the expert witness] relied upon a proper scientific methodology...." *Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 586 (7th Cir.2000). In making this determination, the Supreme Court directed district courts to consider, among other things:

> (1) whether the theory is scientific knowledge that will assist the trier of fact and can be tested; (2) whether the theory has been subjected to peer review or publication; (3) the known or potential rate of error and the existence of standards controlling the technique's operation; and (4) the extent to which the methodology or technique employed by the expert is generally accepted in the scientific community.

*Clark v. Takata Corp.,* 192 F.3d 750, 757 n. 3 (7th Cir.1999), *citing Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786. Second, a district court "must consider whether it would have assisted the jury with a fact at issue." *Walker,* 208 F.3d at 587; *see Clark,* 192 F.3d at 756–57 (holding that the "[a]pplication of *Daubert* to an expert's proffered testimony requires the court to perform a two-step analysis. Initially, the court must determine whether the expert's testimony is reliable, that is, whether it is based on a reliable methodology.... Second, the court must decide 'whether evidence or testimony assists

the trier of fact in understanding the evidence or in determining a fact in issue.' ").

Furthermore, Rule 702 makes clear than an individual may be authorized to render expert opinion testimony on an issue based upon his experience. *See* Fed.R.Evid. 704(a) (providing that expert opinion can be based on an inference and can embrace an ultimate issue); *see also United States v. Brumley*, 217 F.3d 905, 912 (7th Cir.2000) (holding that an expert's opinion was proper because it was based on his experience, not on representing to jury that he possessed any "special knowledge"). "The *Daubert* inquiry is 'a flexible one' and is not designed to serve as a 'definitive checklist or test,' but rather to ensure 'that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Bryant v. City of Chicago*, 200 F.3d 1092, 1098 (7th Cir.2000) (internal citations omitted).

In the instant case, there is little question that Katsaris has extensive academic and practical experience with police and law enforcement practices. *Bryant*, 200 F.3d at 1098. Even a cursory review of his *curriculum vitae* establishes his qualifications to testify as an expert in these matters. In fact, this Court has (in a separate, unrelated case) found Katsaris to be "an expert whose qualifications are too lengthy to mention." *Armstrong v. Mudd*, 655 F.Supp. 853, 858 (C.D.Ill.1987).

The more difficult question is whether Katsaris' testimony will be helpful to the jury. The Court finds that some of Katsaris' testimony would be helpful, and some of it would not. Thus, Patterson's motion to exclude Katsaris' testimony is allowed in part and denied in part.

■ McCloughan is correct that expert testimony on police practices and the use of force is, generally, admissible in a § 1983 excessive force case. *E.g., Kladis v. Brezek*, 823 F.2d 1014, 1019 (7th Cir.1987); *Calusinski v. Kruger*, 24 F.3d 931, 937 (7th Cir.1994). The Court believes that Katsaris' testimony in this area would be helpful to the jury. Specifically, the Court will allow Katsaris to offer testimony regarding the proper procedures to be used by law enforcement officials when restraining arrestees who resist arrest, how and when an officer should decide to go from off-duty to an on-duty officer, and the propriety of the Springfield Police Department's Rules of Conduct (specifically Rule 10). Basically, the Court believes that Katsaris can provide a general framework regarding proper police conduct which the jury can utilize to determine the specific facts of this case.

■ However, the Court will not allow Katsaris to offer any specific opinions regarding the specific facts of this case. As the Court understands it, most of the crucial facts are in dispute. In fact, it is the Court's understanding that at least part of Patterson's defense is going to be that he did not kick McCloughan in the head. As such, the Court believes that, if it were to allow Katsaris to offer his opinion in this case as to whether Patterson or Tavernor followed proper police procedures, the Court, in essence, would be allowing Katsaris to, as an expert, make and relay credibility findings to the jury regarding the witnesses' testimony. Such testimony is improper and is not helpful to the jury. *See Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir.1999) (holding that "[t]he intended focus of [the expert's] testimony was not, however, as the judge believed, [the plaintiff's] mental state. It was whether [the defendant] had acted reasonably given the nature of the threat that [the plaintiff] posed (that is, menacing the officer with a chunk of concrete). But expert evidence is admissible only when it will 'assist' the trier of fact, and the jury needed no help in deciding whether [the defendant] was acting reasonably. [The defendant's] behavior was unambiguously dangerous; the question whether the danger was sufficiently lethal and imminent to justify the use of deadly force was within lay competence.") (internal citations omitted); *see also United States v. Romero*, 57 F.3d 565, 571 (7th Cir.1995), *citing with approval United States v. Cruz*, 981 F.2d 659, 664 (2d Cir.1992) (holding that "[w]e hold only that the operations in question must have esoteric aspects reasonably perceived as beyond the ken of the jury and

that expert testimony cannot be used solely to bolster the credibility of the government's fact-witnesses by mirroring their version of events."); *see also United States v. Lundy,* 809 F.2d 392, 395 (7th Cir.1987) (holding that " 'expert' testimony based solely on hearsay and third-party observations that are adequately comprehensible to lay people would be improper to admit under Rule 702.").

Furthermore, the Court does not believe that a jury needs an expert witness to tell them that it is improper—under proper police procedure or even common decency—to kick someone in the head when he is being restrained on the ground. If the jury were to find that Patterson did this, the Court is confident that it would also find this conduct to be reprehensible and would render a verdict accordingly without the necessity of hearing from an expert to tell them that this conduct was improper. *See United States v. Hall,* 93 F.3d 1337, 1344 (7th Cir.1996) (holding that "[i]f the proffered testimony duplicates the jury's knowledge, Rule 403 might counsel exclusion of the expert testimony to avoid the risk of unduly influencing the jury."); *see also Lundy,* 809 F.2d at 395 (holding that "[c]ourts agree that it is improper to permit an expert to testify regarding facts that people of common understanding can easily comprehend."). Accordingly, Patterson's motion is allowed in part and denied in part. Katsaris may testify as to proper police procedures, but he may not offer his opinion(s) as to whether those procedures were properly followed in this case.

### SECOND MOTION IN LIMINE

Patterson asks the Court to preclude McCloughan from offering witnesses who were not disclosed as experts on his Rule 26 report from offering expert testimony at trial. Specifically, Patterson argues that McCloughan should not be allowed to elicit expert opinion testimony from any of the physicians whom he listed on his witness list regarding their opinion(s) as to the cause of his injuries, their diagnosis, or prognosis because McCloughan did not identify them as experts pursuant to Rule 26. Patterson contends that, because he has not deposed these doctors and because it is too late to do so

now, he would be prejudiced if the Court allows these treating physicians to testify as expert witnesses. Accordingly, Patterson asks the Court to preclude McCloughan from offering any witness as an expert except for W. Ken Katsaris who McCloughan properly identified as an expert pursuant to Rule 26.

McCloughan claims that, contrary to Patterson's allegations otherwise, he made all of the disclosures required by Rule 26. McCloughan asserts that he has provided all of the medical records from the physicians whom he intends to tender as witnesses in this case and that Rule 26 allows them to testify as to the causation of his injuries. In short, McCloughan argues that, if the Court allows Patterson's motion, it would be elevating form over substance merely because he did not invoke the magic word "expert" next to the doctors' names. Accordingly, McCloughan asks the Court to deny Patterson's motion.

Federal Rule of Civil Procedure 26(a)(2)(B) requires a party to disclose his expert witness(es) to the opposing party and requires the expert to sign and provide to the opposing party a report which sets forth, among other things, a complete statement of his opinions and the basis and reasons for his opinions. *Id.* If a party fails to comply with Rule 26(a)(2)(B)'s disclosure requirements, a district court has the authority to strike the party's expert as a sanction. Fed.R.Civ.Pro. 37(c); *see Simplex, Inc. v. Diversified Energy Sys., Inc.,* 847 F.2d 1290, 1292 (7th Cir. 1988) (affirming the trial court's decision not to permit witnesses to provide expert testimony because they had not been identified as experts in compliance with the pretrial order); *see also Miksis v. Howard,* 106 F.3d 754, 760 (7th Cir.1997) (up holding the district court's decision to strike expert witnesses for failure to disclose them in accordance with Rule 26(a)(2)). "The reason for requiring expert reports is 'the elimination of unfair surprise to the opposing party and the conservation of resources.' " *Elgas v. Colorado Belle Corp.,* 179 F.R.D. 296, 299 (D.Nev. 1998), quoting *Reed v. Binder,* 165 F.R.D. 424, 429 (D.N.J.1996).

However, "[t]reating physicians are not normally subject to the strict disclosure re-

quirements of Rule 26(a)(2)(B)." *Elgas,* 179 F.R.D. at 299, *citing Piper v. Harnischfeger Corp.,* 170 F.R.D. 173, 174 (D.Nev.1997). In fact, the advisory committee notes to Rule 26 provide that "[a] treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.". *See Richardson v. Consolidated Rail Corp.,* 17 F.3d 213, 218 (7th Cir.1994) (holding that a treating physician is not an expert so long as his testimony is "based on . . . observations during the course of treating .. [and not] acquired or developed in anticipation of litigation or trial."). Therefore, "a physician does not need to submit an expert report if planned testimony was acquired, 'not in preparation for trial, but rather because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of the lawsuit.'" *Bucher v. Gainey Transp. Serv. of Indiana, Inc.,* 167 F.R.D. 387, 390 (M.D.Pa. 1996).

Initially, the Court notes that it agrees with United States District Judge Milton I. Shadur that instead of focusing on whether a witness is an "expert" under the Federal Rules of Evidence, the question, in reality, is: "whether the witness whose opinion is sought to be elicited is someone from whom a report is required under Fed.R.Civ.P. ('Rule') 26(a)(2)(B)—and that requirement is defined in terms of a 'witness who is retained or specifically employed to provide expert testimony in the case.'" *Sircher v. City of Chicago,* 1999 WL 569568, *2 (N.D.Ill. July 28, 1999). In making this determination, the United States Court of Appeals for the Seventh Circuit has explained that

> [i]n order to determine if an expert need be identified before trial, Rule 26 focuses not on the status of a witness, but rather on the substance of the testimony. . . . Under the Federal Rules, an expert must be identified if his testimony does not come from his personal knowledge of the case, or if his knowledge was "acquired or developed in anticipation of litigation or for trial."

*Patel v. Gayes,* 984 F.2d 214, 218 (7th Cir. 1993) (internal citations and footnote omitted).[1] Thus, the Court must determine whether McCloughan's doctors formed their opinions regarding causation, their prognosis, and diagnosis regarding McCloughan's medical condition through their treatment of him or from some other source. *Id.*

Some district courts in this circuit have concluded that a treating physician may not testify as to the issue of causation without first providing a Rule 26(a)(2)(B) report. *See Zarecki v. National R.R. Passenger Corp.,* 914 F.Supp. 1566, 1573 (N.D.Ill.1996) (holding that opinions as to the ultimate causation of the plaintiff's injuries were not derived solely from the treating physician's treatment of the plaintiff); *see also Barrett v. International Armaments, Inc.,* 1999 WL 199253, *6 (N.D.Ill. Mar.31, 1999) (holding that in order for a treating physician to testify as to causation, he must prepare a Rule 26(a)(2)(B) report); *see also Murray v. Chicago Transit Auth.,* 1999 WL 49355, *1 (N.D.Ill. Jan.29, 1999) (finding that "causation testimony requires a Rule 26(a) expert report."); *see also Brandon v. Village of Maywood,* 179 F.Supp.2d 847, 859 (N.D.Ill. 2001) (holding that "when a physician states a diagnosis or prognosis, he may, but need not, rely on specialized medical training and knowledge that is outside of the average juror's sphere of knowledge", and if so, a Rule 26 report is required). The district courts which have so held have done so based upon the Seventh Circuit's language in *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1105 n. 14 (7th Cir.1994), wherein the Seventh Circuit held that "we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation." *Id.*

On the other hand, some district courts in this circuit have held that a treating physician may testify as to causation without the prerequisite of a Rule 26(a)(2)(B) report. *See Sircher,* 1999 WL 569568, *2 (allowing a treating doctor to testify as to causation without requiring a Rule 26(a)(2)(B) report);

---

**1.** Although *Patel* is a case which interprets Rule 26 prior to the 1993 revision, the case applies

with equal force to present version of Rule 26. *Sircher,* 1999 WL 569568, *2.

*see also Crespo v. City of Chicago*, 1997 WL 537343, *3 (N.D.Ill. Aug.22, 1997), quoting *Mangla v. University of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y.1996) (holding that a treating physician's testimony "may include 'opinion[s] as to the cause of an injury based upon their examination of the patient or to the degree of injury in the future. These opinions are a necessary part of the treatment of the patient ... [and] do not make the treating physicians experts.' "); *see also Zurba v. United States*, 202 F.R.D. 590, 592 (N.D.Ill.2001) (holding that "[t]he fact that a treating doctor proposes to give an opinion regarding the causation and permanency of his patient's injury does not by itself make him a retained expert for purposes of Rule 26(a)(2). Indeed, it is common for a treating physician to consider his patient's prognosis as well as the cause of the patient's injuries.").

■ In this case, the Court will follow the majority rule and finds that McCloughan's treating physicians may offer opinion testimony on causation, diagnosis, and prognosis without the prerequisite of providing a Rule 26(a)(2)(B) report. *See Sprague v. Liberty Mut. Ins. Co.*, 177 F.R.D. 78, 81 (D.N.H. 1998) (collecting cases); *but see Thomas v. Consolidated Rail Corp.*, 169 F.R.D. 1, 2 (D.Mass.1996) (requiring a treating doctor to file a Rule 26(a)(2)(B) report before offering opinion testimony on causation) & *Widhelm v. Wal–Mart Stores, Inc.*, 162 F.R.D. 591, 593–94 (D.Neb.1995) (same). The majority rule has a great deal of appeal in this case for four reasons.

*First*, even the courts which require disclosure and a Rule 26 report before a treating physician is allowed to offer "expert" opinion testimony recognize that "whether a diagnosis requires a doctor to resort to 'scientific, technical or other specialized knowledge' within the scope of Rule 702 will depend on the particular facts of the case." *Brandon*, 179 F.Supp.2d at 859. *Second*, because the doctors have been disclosed by McCloughan as treating physicians, it is more difficult for Patterson to claim unfair surprise. Because

the doctors have been disclosed, albeit in another manner, Patterson had an opportunity to depose them and to inquire into all relevant aspects of their testimony, including their opinions. The fact that Patterson chose not to do so during the discovery period is irrelevant. Likewise, because McCloughan provided Patterson with the treating physicians' medical reports, it is difficult for him to claim unfair surprise or for him to claim that he cannot have his expert(s) refute this evidence.

*Third*, the Seventh Circuit's footnote in *O'Conner* merely stands for the proposition that if a treating physician is going to give expert testimony, he must satisfy Rule 702's requirements. *O'Conner*, 13 F.3d at 1105 n. 14.[2] The Seventh Circuit did not make any reference therein to Rule 26 or its requirements. *Fourth*, doctors do not operate in a vacuum. In order to properly treat and diagnose a patient, the doctor needs to know, establish, or reach a conclusion regarding the cause of the patient's injury. Thus, the Court believes that causation, diagnosis, and prognosis would be based upon the treating physicians' personal knowledge of McCloughan and his case.

However, because the Court does not know the substance of McCloughan's treating physicians' testimony, nothing in this Order should be read to preclude Patterson from objecting during a doctor's testimony if he or his counsel believe that the doctor's testimony is improper. As a general matter, though, Patterson's motion is denied, and McCloughan's treating physicians may testify regarding the causation of his injuries, their prognosis, and their diagnosis of him.

### THIRD MOTION IN LIMINE

■ Patterson asks the Court to preclude McCloughan and/or his counsel from making reference to the fact that he is no longer employed by the City of Springfield as a police officer. Patterson claims that this fact is irrelevant and, therefore, inadmissible. Fed.R.Evid. 401 & 402. In addition, Patter-

---

**2.** Patterson has not challenged McCloughan's treating physicians' qualifications to testify pursuant to Rule 702 and *Daubert*.

son asserts that, if the Court allows McCloughan to introduce this evidence, he will be forced to offer evidence regarding his grievance and arbitration proceedings which he filed in order to get his job back. Patterson argues that this issue is collateral, would confuse the jury, and would waste everyone's time, and therefore, the Court should exclude this fact from trial.

McCloughan agrees that this evidence is irrelevant and represents to the Court that he does not intend to offer evidence of Patterson's termination. However, McCloughan asserts that he does intend to ask Patterson about his employment with the Leland Grove Police Department. McCloughan contends that this evidence is necessary to show his experience, a necessary factor in evaluating his testimony on the appropriateness of his conduct.

The Court also believes that Patterson's discharge from his position with the Springfield Police Department is irrelevant, and therefore, his motion to exclude this evidence is allowed. However, the Court's ruling also extends to McCloughan's ability to ask Patterson about his employment with the Leland Grove Police Department. The only reason McCloughan has tendered for asking Patterson about his employment with the Leland Grove Police Department is to assist the jury in evaluating his experience as a police officer with regard to his conduct on the night in question.

However, Patterson's police experience after the incident with McCloughan is irrelevant for the jury's understanding of the appropriateness, or lack thereof, of his conduct toward McCloughan. Accordingly, Patterson's motion is denied.

### FOURTH MOTION IN LIMINE

Patterson asks the Court to enter an Order prohibiting McCloughan or his counsel from arguing to the jury that the Illinois statute which authorizes a citizen's arrest (725 ILCS 5/107–3) renders all actions taken by him on the night in question to have been made "under the color of state law" as that phrase is used for purposes of 42 U.S.C. § 1983. Patterson claims that McCloughan has admitted that Patterson did not arrest

him. Moreover, Patterson contends that the Seventh Circuit has held that a "citizen who makes a citizen's arrest is not transformed into a state actor by handing over the arrested person to the police...." *Spencer v. Lee,* 864 F.2d 1376, 1382 (7th Cir.1989). Accordingly, Patterson asks the Court to preclude McCloughan or his counsel from making this argument to the jury.

McCloughan argues that the question of whether the Illinois citizen's arrest statute cloaks a person making an arrest under that statute with state authority is a question of law which is inappropriate for resolution on a motion *in limine.* Moreover, McCloughan denies that he has admitted that Patterson did not arrest him; rather, he asserts that he merely did not contest the issue on summary judgment because Patterson's assertion was immaterial at that point. Accordingly, McCloughan asks the Court to defer ruling upon this issue until such time as Patterson raises the issue on a motion for judgment as a matter of law, pursuant to Rule 50(a), at the close of the evidence.

The Court agrees with Patterson that the Illinois Citizen's Arrest Statute cannot be invoked by McCloughan as a basis for the jury to find that Patterson's actions toward him were taken under the color of state law as that phrase is used for purposes of § 1983. The Seventh Circuit has explained:

> there are two circumstances in which private citizens can be brought within the grasp of section 1983 even though the statute is limited to acts under color of state law. First and more common, the citizen may have conspired with a public employee to deprive the plaintiff of his constitutional rights. As a conspirator, the citizen is liable, in civil as in criminal law, for the wrongful acts of the other conspirators committed within the scope of the conspiracy. But there is no suggestion of that here.
>
> Second, the private citizen may have become a public officer *pro tem.* Suppose that in an emergency the police deputized a bunch of private citizens to help them enforce the law, and the deputizations were entirely informal, perhaps not even in

accordance with state or local law. Nevertheless these "deputies," performing, as they would be, public functions, would be considered to be acting under color of law within the meaning of section 1983. But we do not think that the rendering of brief, ad hoc assistance to a public officer transforms a bystander into a state actor, exposing him to liability under federal law and, by doing so, discouraging people from helping the police. We cannot find a case on point but common sense and analogy carry the day. To assist the police is a duty of citizenship; and the performance of a duty to someone does not turn the performer into that someone. A private citizen does not become a policeman by complaining to a policeman, nor (the novel situation presented by this case) by responding to a policeman's request for assistance, unless the request is for such extensive aid that by acceding to the request and rendering the aid the private citizen must realize that he has become a temporary public officer.

*Proffitt v. Ridgway,* 279 F.3d 503, 507–08 (7th Cir.2002). As in *Proffitt,* neither situation is present in the instant case.

Furthermore, the Seventh Circuit has noted that "[t]here have been citizen arrests for as long as there have been public police-indeed much longer. . . . Arrest has never been an exclusively governmental function. Not all state-authorized coercion is government action." *Spencer,* 864 F.2d at 1380. Moreover, the Seventh Circuit has opined that "[a]lthough . . . the[ ] power[ ] [to arrest people for criminal trespass pending arrival of the police] has been traditionally exercised by the sovereign *via* the police, [it] has [not] been exclusively reserved to the police. . . . The fact that [the defendant] performed his duties on public property, or for the public's benefit, does not make him a state actor." *Wade v. Byles,* 83 F.3d 902, 905 (7th Cir. 1996), *citing* 725 ILCS 5/107–3 (providing for citizens' arrests); *see Carey v. Continental Airlines, Inc.,* 823 F.2d 1402, 1404 (10th Cir. 1987) (holding that a citizen's arrest does not constitute state action). Thus, the Court does not believe that, if an individual acts pursuant to the Illinois Citizen's Arrest Stat-

ute, he *ipso facto* becomes a state action for purposes of § 1983.

Whether Patterson "arrested" McCloughan is a matter of factual dispute to be resolved by the jury, and nothing in this Order should be read as limiting the evidence on this issue. However, as for McCloughan being able to argue to the jury that 725 ILCS 5/107–3 rendered Patterson's actions as being taken under color of law for § 1983 purposes, he may not do so. Accordingly, Patterson's motion is allowed.

### FIFTH MOTION IN LIMINE

Patterson asks the Court to enter an Order precluding McCloughan or his counsel from using his Original Answer as an admission during the trial. Specifically, Patterson argues that the Court should prohibit McCloughan from attempting to use his Answer to paragraph 5 of the general allegations in McCloughan's First Amended Complaint as an admission that he acted under color of state law in his dealings with McCloughan on the night in question. Patterson asserts that, since filing his Original Answer, United States Magistrate Judge Byron G. Cudmore allowed him to amend his Answer pursuant to Rule 15 because his Answer constituted an inadvertent mistake. As such, Patterson contends that his subsequent pleading superceded his original Answer and should not be used at trial.

In addition, Patterson claims that, if the Court allows McCloughan to use his Original Answer, he will be forced to offer evidence of Magistrate Judge Cudmore's order, this Court's Order affirming Magistrate Judge Cudmore's ruling, and the effects of Rule 15. Patterson argues that this evidence is unnecessary, a waste of time, irrelevant, prejudicial, and should be excluded. Therefore, Patterson asks the Court to preclude McCloughan from using his Original Answer as an admission of this element of McCloughan's § 1983 cause of action.

McCloughan argues that an admission in a pleading is a judicial admission and that, although the pleading ceases to be conclusive, it remains an evidentiary admission. In addition, McCloughan contends that the Seventh Circuit has held it to be reversible error

not to admit evidence of an admission contained within a pleading. *Contractor Utility Sales Co., Inc. v. Certain–teed Prods. Corp.,* 638 F.2d 1061 (7th Cir.1981). Finally, McCloughan asserts that Magistrate Judge Cudmore's order and this Court's Order affirming Magistrate Judge Cudmore's ruling were limited to addressing the propriety of allowing an amendment pursuant to Rule 15 and did not contemplate or rule upon the admissibility of Patterson's admission for purposes of trial. Accordingly, McCloughan asks the Court to deny Patterson's motion and to allow him to tender Patterson's admission to the jury.

McCloughan is correct, that "[a]lthough prior pleadings cease to be conclusive judicial admissions, they are admissible in a civil action as evidentiary admissions. When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent." *Contractor Utility Sales,* 638 F.2d at 1084 (internal citation omitted).

Nevertheless, the Court must still weigh the admission pursuant to Rule 403. *Eastern Natural Gas Corp. v. Aluminum Co. of Am.,* 126 F.3d 996, 1001–02 (7th Cir.1997). Here, the Court finds that, if it allows McCloughan to use paragraph 5 of Patterson's Original Complaint as an admission, it would confuse the jury because Patterson would then have to be given the opportunity to explain to the jury the function of Rule 15 and the fact that Magistrate Judge Cudmore allowed Patterson to amend his Answer. The Court believes that all of this information is collateral to the main issues at hand and that it would tend to confuse the jury. Thus, in order to minimize prejudice to Patterson, the Court will allow McCloughan to use Patterson's Original Answer to cross-examine witnesses and to refresh their recollections, but he may not argue that, in his Original Answer, Patterson admitted that he acted under color of state law in his conduct toward McCloughan. *Id.* at 1002. Accord-

ingly, Patterson's motion is allowed in part and denied in part.

### SIXTH MOTION IN LIMINE

■ Finally, Patterson asks the Court to preclude McCloughan from referring to him as "Officer Patterson." Patterson asserts that, because the parties dispute whether he was acting under color of state law, allowing McCloughan to refer to him as "Officer" would prejudice him and assumes a fact which is contested. Accordingly, Patterson asks the Court to enter an Order precluding McCloughan or his counsel from referring to him as "Officer Patterson" during the trial.

McCloughan asserts that the fact that Patterson is a police officer is a reality. Thus, referring to Patterson using his title as an officer is justifiable; to do otherwise would be a *non sequitur.* In fact, McCloughan claims that referring to Patterson as an officer may cause the jury to view him more favorably because individuals are, generally, sympathetic to police officers. Accordingly, McCloughan asks the Court to deny Patterson's motion.

Patterson's motion is denied. Although Patterson asserts that utilizing his title before the jury will prejudice him, he does not explain how or why. In any event, Patterson was an officer with the Springfield Police Department, was an officer with the Leland Grove Police Department, and, as the Court understands it, is once again an officer with the Springfield Police Department. As such, the Court finds no reason why counsel, the parties, and the witnesses should not refer to him as officer or as Officer Patterson. Accordingly, Patterson's motion is denied.

*Ergo,* Defendant Patterson's First Motion *In Limine* is ALLOWED in part and DENIED in part. McCloughan's expert witness, W. Ken Katsaris, may testify as to proper police procedures, but he may not offer his opinion(s) as to whether those procedures were properly followed in this case.

Defendant Patterson's Second Motion *In Limine* is DENIED. Accordingly, McCloughan's treating physicians may testify regarding the causation of his injuries, their prognosis, and their diagnosis of him.

Defendant Patterson's Third Motion *In Limine* is ALLOWED. Accordingly, neither McCloughan, his counsel, nor his witnesses may reference Patterson's discharge from the Springfield Police Department or his subsequent employment with the Leland Grove Police Department.

Defendant Patterson's Fourth Motion *In Limine* is ALLOWED. Accordingly, McCloughan, his counsel, or any of his witnesses may not argue, assert, or allege to the jury that the Illinois Citizen's Arrest Statute (735 ILCS 5/107–3) rendered Patterson's actions toward McCloughan to have been taken "under color of state law" as that phrase is used for purposes of imposing liability under 42 U.S.C. § 1983.

Defendant Patterson's Fifth Motion *In Limine* is ALLOWED in part and DENIED in part. Accordingly, the Court will allow McCloughan to use Patterson's Original Answer to cross-examine witnesses and to refresh their recollections, but he may not argue that, in his Original Answer, Patterson admitted that he acted under color of state law in his conduct toward McCloughan.

Defendant Patterson's Sixth Motion *In Limine* is DENIED. Accordingly, counsel and the witnesses may refer to Defendant Patterson as "Officer Patterson."